Young, J.
Plaintiff alleges in this action that she was discriminated against in her employment as a Detroit police officer on the basis of her sex and sexual orientation in violation of the declaration of rights contained in the Charter of the City of Detroit. Plaintiff further contends that the charter creates a private cause of action allowing recovery for violation of the rights set forth in it. Assuming the charter provides no explicit private right of recovery, plaintiff alternatively urges this Court to create, as a cumulative remedy available under the charter, such a cause of action.
We hold that regardless of whether the charter provides a private cause of action against the city for *190 sexual orientation discrimination, such a cause of action would contravene the governmental tort liability act (gtla), MCL 691.1407. Accordingly, we do not accept plaintiffs invitation to recognize such a cause of action.
Further, because the plaintiff failed to plead a recognized claim in avoidance of governmental immunity, her sexual orientation discrimination claim should have been dismissed. Governmental immunity is a characteristic of government and thus a plaintiff must plead her case in avoidance of immunity. To the extent that it holds otherwise, McCummings v Hurley Medical Ctr, 433 Mich 404; 446 NW2d 114 (1989), is overruled.
Accordingly, we reverse the Court of Appeals decision, reinstate the trial court’s order of summary disposition in favor of the city of Detroit regarding the sexual orientation claim, and remand the case to the Court of Appeals for reconsideration of the sex discrimination claim in light of this opinion.[1]
I. FACTS AND PROCEDURAL HISTORY
In 1974, plaintiff was hired by the city as a police officer. During the course of her employment, she attained the status of lieutenant and held the positions of acting inspector, acting command lieutenant, acting administrative lieutenant, and acting inspector of the sex crimes unit. The claims before the Court *191 arose during plaintiffs tenure with the sex crimes unit.
Plaintiff alleges that, while working in the sex crimes unit, she was repeatedly propositioned by male supervisors for sex and that she rebuffed the unwelcome advances, in part because she is a lesbian. Plaintiff complained to her superiors, who allegedly refused to take any action because of her sexual orientation. Plaintiff also claims that she endured further discrimination and harassment as a result of her sexual orientation. Specifically, she complains that the police department gave her an afternoon desk job answering phones, prohibited her from participating in any investigative work, and restricted her from taking more than two weekends off a month. She has since retired from the police force.
Plaintiff filed suit, alleging intentional infliction of emotional distress and violations of the charter of the city of Detroit. Regarding the latter claims, plaintiff maintained that the city violated § 2 of the charter’s declaration of rights by discriminating on the basis of sex and sexual orientation.[2] The city moved for summary disposition, asserting that plaintiff failed to state a claim upon which relief can be granted, MCR 2.116(C)(8). Specifically, the city argued that plaintiff’s tort claims were barred by governmental immunity and that the city charter did not give plaintiff a *192 private cause of action. The trial court agreed with the city and granted its motion for summary disposition. Plaintiff appealed, arguing that the violation of the rights guaranteed by the city charter created a private cause of action.[3]
In a two-to-one decision, the Court of Appeals reversed, holding that plaintiff had a private cause of action for sex and sexual orientation discrimination. The majority reasoned that there is an express civil right to be free from employment discrimination based on one’s sex arising under the Civil Rights Act, MCL 37.2101 et seq., and that the city extended that protection to its charter.[4] Relying on Pompey v General Motors Corp, 385 Mich 537; 189 NW2d 243 (1971), the majority concluded that equal opportunity in the pursuit of employment was a protected right, and because the city extended that protection to include sexual orientation discrimination, the courts could recognize, as a cumulative remedy, a civil action for such a claim.
The dissent opined that it was not clear that a city had authority to create a cause of action and questioned whether Pompey should be extended to rights created by city charters.
The city appealed the Court of Appeals holding that the judiciary could recognize a private cause of action for sexual orientation discrimination. We granted leave to appeal. 464 Mich 874 (2001).
*193 n. STANDARD OF REVIEW
The issues presented are whether the city charter may create a cause of action against the city for sexual orientation discrimination in the face of state governmental immunity law and whether governmental immunity is an affirmative defense or a characteristic of government so that a plaintiff must plead in avoidance of it. These are questions of law that the Court reviews de novo. Burt Twp v Dep’t of Natural Resources, 459 Mich 659, 662-663; 593 NW2d 534 (1999). We also review a trial court’s decision to grant or deny a motion for summary disposition de novo. Beaudrie v Henderson, 465 Mich 124, 129; 631 NW2d 308 (2001). Because this is a motion for summary disposition brought under MCR 2.116(C)(8), we test the legal sufficiency of the complaint on the basis of the pleadings alone. Id.
m. DISCUSSION
A. GOVERNMENTAL IMMUNITY
Plaintiff contends that the charter expressly creates a private cause of action for sexual orientation discrimination.[5] However, whether the charter attempted to create a private cause of action for sexual orienta *194 tion discrimination is an irrelevant inquiry because we hold that the charter could not create a cause of action against the city without contravening state governmental immunity law.[6]
Const 1963, art 7, § 22 governs the authority of a city to enact a charter:
Under general laws the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village. Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law. No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section. [Emphasis added.]
Thus, although art 7, § 22 grants broad authority to municipalities, it clearly subjects their authority to constitutional and statutory limitations.[7]
*195 One such statutory limitation involves governmental immunity. In the governmental tort liability act (gtla), the Legislature expressly stated that “[e]xcept as otherwise provided in this act, a governmental agency is immune from tort liability if [it] is engaged in the exercise or discharge of a governmental function.” MCL 691.1407(1). Accordingly, a governmental agency is immune unless the Legislature has pulled back the veil of immunity and allowed suit by citizens against the government. The GTLA allows suit against a governmental agency in only five areas.[8] However, there are other areas outside the GTLA where the Legislature has allowed specific actions against the government to stand, such as the Civil Rights Act.[9] Further, municipalities may be liable pursuant to 42 USC 1983. Monell v New York City DSS, 436 US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978).
*196 However, none of the exceptions where a suit is allowed against the government can be read to allow suit for sexual orientation discrimination. Likewise, no statute grants governmental agencies the authority to create an immunity exception for sexual orientation discrimination or waive immunity in the area of civil rights. Notably, the CRA, which makes a municipality liable for specific civil rights violations, neither provides a cause of action for sexual orientation discrimination nor grants municipalities the authority to create one. MCL 37.2101 et seq.[10] Moreover, the CRA limits complaints to causes of action for violations of the act itself:
A person alleging a violation of this act may bring a civil action for appropriate injunctive relief or damages, or both. [MCL 37.2801(1) (emphasis added).][11]
In sum, without some express legislative authorization, the city cannot create a cause of action against itself in contravention of the broad scope of governmental immunity established by the gtla. No such legislative act has recognized sexual orientation discrim *197 ination claims. Accordingly, this Court declines to circumvent the limitations placed on a municipality by the Legislature and recognize a cause of action against the city for sexual orientation discrimination.[12]
B. A CITY CANNOT WAIVE GOVERNMENTAL IMMUNITY
Because the city abandoned its assertion of governmental immunity to this Court and the law regarding the nature of governmental immunity has been misguided for some time, we will address the viability of plaintiffs complaint here as it pertains to governmental immunity.[13]
1. THE NATURE OF GOVERNMENTAL IMMUNITY
A governmental agency is immune from tort liability if the governmental agency is engaged in the exer *198 cise or discharge of a governmental function. MCL 691.1407(1). This Court has taken steps to clarify the origin and history of governmental immunity, most recently in Pohutski v Allen Park, 465 Mich 675; 641 NW2d 219 (2002). See also Ross v Consumers Power Co (On Rehearing), 420 Mich 567; 363 NW2d 641 (1984). The Court does not need to reiterate that history today, but we take this opportunity to clarify that governmental immunity is a characteristic of government. Canon v Thumudo, 430 Mich 326; 422 NW2d 688 (1988); Hyde v Univ of Michigan Regents, 426 Mich 223; 393 NW2d 847 (1986); McCann v Michigan, 398 Mich 65; 247 NW2d 521 (1976); Markis v Grosse Pointe Park, 180 Mich App 545; 448 NW2d 352 (1989); Ross, supra at 621, n 34; Galli v Kirkeby, 398 Mich 527, 532, 540-541; 248 NW2d 149 (1976). As such, plaintiff must plead her case in avoidance of immunity. See Hanson v Mecosta Co Rd Comm’rs, 465 Mich 492, 499; 638 NW2d 396 (2002); Haliw v Sterling Heights, 464 Mich 297, 304; 627 NW2d 581 (2001); Nawrocki v Macomb Co Rd Comm, 463 Mich 143, 172, n 29; 615 NW2d 702 (2000); Ross, supra at 621, n 34. To the extent that it holds otherwise, McCummings v Hurley Medical Ctr, 433 Mich 404; 446 NW2d 114 (1989), is overruled.
Until 1989, it was well established in Michigan that governmental immunity was a characteristic of government. See, e.g., Hyde[14] and Canon.[15] In McCann, *199 Justice Ryan stated that a plaintiff must plead facts in avoidance of immunity, reasoning:
At first impression, it may appear appropriate to characterize governmental immunity as an affirmative defense. However, a careful analysis of the doctrine as construed by this Court indicates that, to plead a cause of action against the state or its agencies, the plaintiff must plead and prove facts in avoidance of immunity. In McNair v State Hwy Dep’t, 305 Mich 181, 187; 9 NW2d 52 (1943), for instance, we held that the state’s failure to plead sovereign immunity will not constitute a waiver because “failure to' plead the defense of sovereign immunity cannot create a cause of action where none existed before.” In Penix v City of St Johns, 354 Mich 259; 92 NW2d 332 (1958), we held that a complaint which contained no averment that the defendant was engaging in a proprietary function, and which in fact alleged activity to which governmental immunity applied, stated no cause of action against the municipality. Thus, although we have on occasion referred to governmental immunity as a defense, see [McNair]; Martinson v Alpena, 328 Mich 595, 599; 44 NW2d 148 (1950), our past treatment of the doctrine indicates that its inapplicability is an element of a plaintiff’s case against the state. [McCann, supra at 77, n 1 (opinion of Ryan, J.).]
This reasoning was reiterated nearly ten years later in Ross:
In [Galli], four members of this Court held that plaintiffs must plead facts in their complaint in avoidance of immunity, i-e., they must allege facts which would justify a finding that the alleged tort does not fall within the concept of sovereign or governmental immunity. This may be accomplished by stating a claim which fits within one of the statutory exceptions or pleading facts which demonstrate that the tort occurred during the exercise or discharge of a nongovernmental or proprietary function. See [McCann, supra at 77], Sovereign and governmental immunity are not affirmative defenses, but characteristics of government which prevent imposition of tort liability upon the govern *200 mental agency. Galli, supra, p 541, n 5; McCann, supra, p 77, n 1. [Ross, supra at 621, n 34.]
However, in McCummings, this Court departed from years of precedent and concluded that governmental immunity is an affirmative defense rather than a characteristic of government. The McCummings Court reasoned:
The pronouncements in Hyde and Canon clearly do not square with the statement in Ross that “[sovereign and governmental immunity from tort liability exist only when governmental agencies are ‘engaged in the exercise or discharge of a governmental function.’ ” If it takes a legislative decree for immunity to exist, and then only under circumstances defined by the Legislature, how can it be said that sovereign or governmental immunity'is a “characteristic of government?”
We are persuaded that the reasoning in Ross is correct, i.e., that immunity from tort liability exists only in cases where the governmental agency was engaged in the exercise or discharge of a governmental function. The question whether a governmental agency was engaged in a governmental function when performing the act complained of is a question best known to the agency and best asserted by it. It naturally follows that plaintiffs need not plead facts in avoidance of immunity, but that it is incumbent on the agency to assert its immunity as an affirmative defense. The fact that the source of the immunity is a legislative act makes the contention of immunity no less a matter for assertion as an affirmative defense.
We are also persuaded that there is no sound basis for requiring individuals, but not agencies, to assert governmental immunity as an affirmative defense. The source of the immunity from tort liability is the same. MCL 691.1407. Nor do we perceive any basis for treating the alleged immunity of a governmental agency any differently, for pleading purposes, from any other lype of immunity granted by law. *201 Immunity must be [pleaded] as an affirmative defense. [Id. at 410-411.][16]
See also Scheurman v Dep’t of Transportation, 434 Mich 619; 465 NW2d 66 (1990); Tryc v Michigan Veterans’ Facility, 451 Mich 129; 545 NW2d 642 (1996).
We conclude that McCummings was wrongly decided and, returning to our prior precedent, overrule McCummings’ conclusion that governmental immunity is an affirmative defense. MCL 691.1407(1) states, “[e]xcept as otherwise provided in this act, a governmental agency is immune from tort liability if [it] is engaged in the exercise or discharge of a governmental function.” Thus, by its terms, the gtla provides that unless one of the five statutory exceptions applies, a governmental agency is protected by immunity. The presumption is, therefore, that a governmental agency is immune and can only be subject to suit if a plaintiffs case falls within a statutory exception. As such, it is the responsibility of the party seeking to impose liability on a governmental agency to demonstrate that its case falls within one of the exceptions.
In addition to the textual support for this conclusion in the language of the gtla, we note that the McCummings Court relied on a substantively flawed analysis in reaching the contrary opinion. First, the McCummings Court’s reliance on Ross to support its conclusion that governmental immunity is an affirmative defense is perplexing, given that Ross itself described governmental immunity as a characteristic of government. Id. at 621, n 34. Second, in support of its analysis the McCummings Court asked, “If it takes a legislative decree for immunity to exist, and then *202 only under circumstances defined by the Legislature, how can it be said that sovereign or governmental immunity is a ‘characteristic of government?’ ” Id. at 410-411.
In response, we merely observe that, historically, Michigan recognized at common law governmental immunity for all levels of government until this Court chose to abrogate governmental immunity for municipalities in 1961. Williams v Detroit, 364 Mich 231; 111 NW2d 1 (1961). In response to Williams and the possibility that this Court would further erode the remaining common-law governmental immunity for counties, townships, and villages, the Legislature enacted the Governmental Immunity Act of 1964 (GIA), thereby reinstituting governmental immunity protection for municipalities and preserving sovereign immunity for the state. In effect, the GIA restored the Williams status quo ante. Pohutski, supra at 682. Thus, contrary to McCummings, it did not take a legislative decree to create governmental immunity, but a legislative act to preserve the doctrine that this Court had historically recognized as a characteristic of government. The McCummings suggestion that governmental immunity could not be a characteristic of government because it was created by legislation misapprehends the history of the Court’s actions and the legislative response. We believe that once the sequence of the judicial and legislative events is grasped, the analytical flaw at the root of McCummings is apparent.[17]
*203 For these reasons,[18] we overrule McCummings[19] to this extent and return to the longstanding principle extant before McCummings that, governmental immunity being a characteristic of government, a party suing a unit of government must plead in avoidance of governmental immunity.[20]
*204 2. PLAINTIFF’S COMPLAINT
A plaintiff pleads in avoidance of governmental immunity by stating a claim that fits within a statutory exception or by pleading facts that demonstrate that the alleged tort occurred during the exercise or discharge of a nongovernmental or proprietary function. McCann, supra at 77. Plaintiff did neither in this case.
Governmental immunity protects the conduct of governmental agencies, which include two types of actors: the state and political subdivisions. MCL 691.1401(d). The Detroit Police Department, as a political subdivision, MCL 691.1401(b), is a “governmental agency” for purposes of governmental immunity. MCL 691.1401(d). As such, absent the applicability of a statutory exception, it is immune from tort liability if the tort claims arise from the department’s exercise or discharge of a governmental function. MCL 691.1407(1).“ ‘Governmental function’ is an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law.” MCL 691.1401(f). It is well established in Michigan that the management, operation, and control of a police department is a governmental function. Moore v Detroit, 128 Mich App 491, 496-497; 340 NW2d 640 (1983); Graves v Wayne Co, 124 Mich App 36, 40-41; 333 NW2d 740 (1983).
Plaintiff’s claims regarding the police department all involve decisions that are part and parcel of the department’s discharge of governmental functions. The decisions at issue in this case are job reassignment, distribution of vacation time, and determining the extent to which department officers are involved *205 in investigations. These are ordinary day-to-day decisions that the police department makes in the course of discharging its governmental function. As such, the police department’s conduct is within the scope of § 7. Thus, plaintiff’s claim is barred unless it falls within one of the statutory exceptions. As discussed above, plaintiff’s sexual orientation discrimination claim falls under no immunity exception.
Further, plaintiff’s complaint makes no mention of governmental immunity with respect to any of her claims. In fact, it was not until the city moved for summary disposition that plaintiff claimed that her action was not barred by governmental immunity. Even then, however, plaintiff’s responsive pleading went only to her intentional infliction of emotional distress claim, which she abandoned by failing to raise it in the Court of Appeals.
Because plaintiff failed to state a claim that fits within a statutory exception or plead facts that demonstrate that the alleged tort occurred during the exercise or discharge of a nongovernmental or proprietary function, we conclude that plaintiff did not plead and could not plead in avoidance of governmental immunity and that her sexual orientation discrimination claim should have been dismissed on the city’s motion for summary disposition.
IV. THE DISSENTS
Justices Weaver and Cavanagh criticize our opinion primarily on the ground that our decision is allegedly reached without the benefit of briefing or argument. This argument camouflages their reluctance to address the core legal questions at hand.
*206 First, concerning McCummings, additional briefing would not assist this Court in addressing this question of law. All the relevant argument is embodied in the years of case law on the nature of governmental immunity. Of that case law, McCummings is an aberration; its doctrine stands alone in our jurisprudential history in holding that governmental immunity is an affirmative defense and not a characteristic of government. In this case, we addressed which was aberrational: McCummings or the remaining eighty years of case law. We have concluded that McCummings was the aberration.
Regarding the dissenters’ assertion that the issue of the charter being preempted by the gtla was not briefed or raised by the parties, we note that the issue was squarely in front of the parties. The central question in this case was whether the charter’s purported creation of a cause of action for sexual orientation discrimination is preempted by state law. The governmental tort liability act is a state law. If the charter creates a cause of action for sexual orientation discrimination, then it conflicts with the state law of governmental immunity. Questioning by several members of this Court at oral argument specifically raised the governmental immunity issue.[21] We absolutely *207 oppose the dissenters’ apparent position that although a controlling legal issue is squarely before this Court, in this case preemption by state law, the parties’ failure or refusal to offer correct solutions to the issue limits this Court’s ability to probe for and provide the correct solution. Such an approach would seriously curtail the ability of this Court to function effectively and, interestingly, given the dissenters’ position, actually make oral argument a moot practice.
To be certain, we emphasize that, contrary to Justice Cavanagh’s allegation, we have not disregarded “the foundational principles of our adversarial system of adjudication.” Post at 213. Rather, addressing a controlling legal issue despite the failure of the parties to properly frame the issue is a well understood judicial principle. See Legal Services Corp v Velazquez, 531 US 533, 549, 558; 121 S Ct 1043; 149 L Ed 2d 63 (2001) (majority and dissent both stating that whether to address an issue not briefed or contested by the parties is left to discretion of the Court); *208 Seattle v McCready, 123 Wash 2d 260, 269; 868 P2d 134 (1994) (indicating that the court “is not constrained by the issues as framed by the parties if the parties ignore a constitutional mandate, a statutory commandment, or an established precedent”). In fact, all three dissenters recently signed or concurred in an opinion where this Court decided an issue not raised or briefed by any party. Federated Publications, Inc v City of Lansing, 467 Mich 98; 649 NW2d 383 (2002) (resolving a standard of review issue). Accordingly, we find no merit in the dissents’ criticism of our opinion on the ground that the parties did not brief the issue themselves and interpret their dissenting statements as an indication of their reluctance to address the core legal questions before us.
In his dissent, Justice Cavanagh has fired his standard shot: this Court overrules cases capriciously. Now he has added a fusillade, suggesting that the majority “tees up” issues it wants the parties to brief, and somewhat inconsistently, that the majority decides matters without briefing by the parties. While we recognize that following the law as enacted by our Legislature is sometimes at odds with our dissenting colleague’s personal policy preferences, our constitutional duty demands that we follow the rule of law. While Justice Cavanagh chooses to characterize his policy frustrations as the majority’s judicial disobedience, neither the law, this Court’s history, nor Justice Cavanagh’s own judicial history supports his characterization.
On the so-called briefing issue, we think Justice Cavanagh wants it both ways. In this case, where the controlling legal issue was discovered after the parties had submitted their briefs, Justice Cavanagh com *209 plains. In other cases, when the Court has believed there might be a controlling issue on which it wanted the benefit of the parties’ briefing, Justice Cavanagh also complains. See, e.g., Robinson v Detroit, 462 Mich 439; 613 NW2d 307 (2000) (a case cited in his footnote 9), wherein Justice Cavanagh dissented, criticizing the majority for flagging in its grant order a legal issue the Court specifically wanted briefed by the parties. 461 Mich 1201.[22]
Apart from Justice Cavanagh’s desire to have it both ways on the issue of party “briefing,” no one can seriously question the right of this Court to set forth the law as clearly as it can, irrespective of whether the parties assist the Court in fulfilling its constitutional function. The jurisprudence of Michigan cannot be, and is not, dependent upon whether individual parties accurately identify and elucidate controlling legal questions.
*210 Concerning Justice Cavanagh’s habitual assertion that this Court casually disregards stare decisis, we note that Justice Cavanagh himself is no stranger to overruling precedent. See, e.g., DiFranco v Pickard, 427 Mich 32; 398 NW2d 896 (1986), overruling Cassidy v McGovern, 415 Mich 483; 330 NW2d 22 (1982); AFSCME v Highland Park Bd of Ed, 457 Mich 74; 577 NW2d 79 (1998), overruling Ensley v Associated Terminals, Inc, 304 Mich 522; 8 NW2d 161 (1943); Haske v Transport Leasing, Inc, 455 Mich 628, 652; 566 NW2d 896 (1997), overruling Rea v Regency Olds/Mazda/Volvo, 450 Mich 1201; 536 NW2d 542 (1995); W T Andrew Co, Inc v Mid-State Surety Corp, 450 Mich 655; 545 NW2d 351 (1996), overruling Weinberg v Univ of Michigan Regents, 97 Mich 246; 56 NW 605 (1893); People v Kevorkian, 447 Mich 436; 527 NW2d 714 (1994), overruling People v Roberts, 211 Mich 187; 178 NW 690 (1920); In re Hatcher, 443 Mich 426; 505 NW2d 834 (1993), overruling Fritts v Krugh, 354 Mich 97; 92 NW2d 604 (1958); Mead v Batchlor, 435 Mich 480; 460 NW2d 493 (1990), overruling (to the extent inconsistent) Sword v Sword, 399 Mich 367; 249 NW2d 88 (1976); Albro v Alim, 434 Mich 271; 454 NW2d 85 (1990), overruling unidentified prior Supreme Court cases; Schwartz v Flint, 426 Mich 295; 395 NW2d 678 (1986), overruling Ed Zaagman, Inc v Kentwood, 406 Mich 137; 277 NW2d 475 (1979); McMillan v State Hwy Comm, 426 Mich 46; 393 NW2d 332 (1986), overruling Cramer v Detroit Edison Co, 296 Mich 662; 296 NW 831 (1941), and Dawson v Postal Telegraph-Cable Co, 265 Mich 139; 251 NW 352 (1933).
More important, we emphasize that this stout defense of stare decisis by Justices Cavanagh and *211 Kelly is their standard argument when they are unhappy with the result of an opinion. See Sington v Chrysler Corp, 467 Mich 144; 148 NW2d 624 (2002) (Kelly, J., dissenting). Their charge is that the new composition of this Court is the explanatory variable for a deteriorating respect for precedent. Sington provides the latest example of their argument, but it also demonstrates how statistically insignificant are the occasions when this Court (as opposed to its pre-1999 predecessor) has overturned its prior cases.
In Sington, Justice Kelly states that, in the five years from 1993 to 1997, twelve cases were overturned by this Court whereas in the four and a half years from 1998 to July, 2002, twenty-two cases were overturned. During the 1993 to 1997 period, the Court overruled precedent at a rate of about one-twelfth of one percent (12 of 13,682 cases disposed of), while during the 1998 to 2002 period, the Court overruled precedent at about a rate of one-fifth of one percent (22 of 11,190). The contrast is one-twelfth of one percent in the Court’s “good ole days” versus one-fifth of one percent in the new world of the current Court, even counting against the current Court the six cases decided in 1998 before this majority came into existence. Viewed in this context, no neutral commentator would conclude that the majority has a complete disregard for stare decisis, but that the dissenters are strict adherents. In other words, Justice Kelly and Justice Cavanagh’s records do not reflect a previous hard line adherence to stare decisis and their dissatisfaction is not with our alleged lack of adherence to stare decisis, but in their inability to reach the policy choice they prefer given the majority’s commitment to follow the laws enacted by our Legislature.
*212 I think it is fair to say that the cases Justice Cavanagh cites in footnote 9 more probably reveal his desire that this Court never address a controlling legal issue. Post at 224-225. Yet, we welcome Justice Cavanagh’s newly announced repudiation of “judicial activism in any form.” We question whether his new judicial philosophy includes the obligation to respect and follow the law, even where it is inconvenient to one’s policy preferences or even when the parties fail to bring the controlling law to the Court’s attention.
V. CONCLUSION
We hold that regardless of whether the charter attempted to create a private cause of action against the city for sexual orientation discrimination, it could not do so without contravening governmental immunity law. Accordingly, this Court is without authority to act on plaintiff’s request to recognize such a cause of action.
In addition, we hold that, governmental immunity being a characteristic of government, a party suing a unit of government must plead in avoidance of governmental immunity. We overrule McCummings to the extent it holds otherwise.
Plaintiff did not plead in avoidance of governmental immunity in her complaint. Accordingly, the Court of Appeals holding is reversed, and the trial court’s order for summary disposition in favor of defendant is reinstated with regard to the sexual orientation discrimination claim. Because the city did not appeal the Court of Appeals resolution of the sex discrimination claim, we remand that issue to the Court of Appeals for reconsideration in light of this opinion.
*213 Corrigan, C.J., and Taylor and Markman, JJ., concurred with Young, J.

 The city appealed the Court of Appeals holding that the courts could recognize a private cause of action for sexual orientation discrimination under the city charter, but not the court’s resolution of plaintiffs sex discrimination claim. For this reason, we remand the case to that Court for reconsideration of plaintiffs charter-based sex discrimination claim in light of this opinion.

 Section 2 provides:
The city has an affirmative duty to secure the equal protection of the law for each person and to insure equality of opportunity for all persons. No person shall be denied the enjoyment of civil or political rights or be discriminated against in the exercise thereof because of race, color, creed, national origin, age, handicap, sex, or sexual orientation.

 Plaintiff elected not to appeal the trial court’s ruling dismissing the intentional infliction of emotional distress claim. Therefore, those claims are not before this Court.

 243 Mich App 132; 620 NW2d 670 (2000).

 In the alternative, plaintiff urges this Court to extend the holding in Pompey to recognize a cumulative remedy for sexual orientation discrimination under the charter. We decline to do so. Rather, we conclude that Pompey is inapplicable to the case before us. Pompey contemplated a cumulative remedy for discrimination in private employment, whereas plaintiff in this case seeks to'impose liability on a municipality. Accordingly, unlike the Court in Pompey, we must address whether governmental immunity precludes the Court from recognizing a private cause of action for a municipality’s tortious conduct except as expressly authorized by the Legislature.

 Justice Cavanagh’s assertion that whether the charter creates a cause of action is a relevant inquiry because its answer affects causes of actions against nongovernmental entities ignores the fact that our opinion pertains only to actions against governmental entities. Because we are only addressing the creation of a cause of action against a governmental entity, whether the charter does or does not create such an action is ultimately irrelevant because the gtla does not permit such an action. Our opinion does not address, as Justice Cavanagh curiously alleges, whether a city can create a cause of action against nongovernmental entities.
We also point out that discrimination claims have always been characterized as a species of statutory tort. Donajkowski v Alpena Power Co, 460 Mich 243, 247; 569 NW2d 574 (1999). Consequently, Justice Cavanagh’s suggestion that a charter discrimination claim might not fall within the ambit of the gtla is without foundation.

 This constitutional limitation on a municipality’s authority is repeated in the Home Rule City Act, most emphatically in MCL 117.36, which states:
*195 No provisions of any city charter shall conflict with or contravene the provisions of any general law of the state.
See also MCL 117.4K3), which governs permissible charter provisions:
[Each city may in its charter provide] [f]or the exercise of all municipal powers in the management and control of municipal property and in the administration of the municipal government, whether such powers be expressly enumerated or not; for any act to advance the interests of the city, the good government and prosperity of the municipality and its inhabitants and through its regularly constituted authority to pass all laws and ordinances relating to its municipal concerns subject to the constitution and general laws of this state. [Emphasis added.]

 The five statutory exceptions to governmental immunity are the “highway exception,” MCL 691.1402, the “motor vehicle exception,” MCL 691.1405, the “public building exception,” MCL 691.1406, the “proprietary function exception,” MCL 691.1413, and the “governmental hospital exception,” MCL 691.1407(4).

 MCL 37.2103(g) and 37.2202(a); see Manning v Hazel Park, 202 Mich App 685, 699; 509 NW2d 874 (1993) (governmental immunity is not a defense to a claim brought under the Civil Rights Act).

 Indeed, as this Court has consistently held since its seminal case, Ross, exceptions to governmental immunity are narrowly construed. See, e.g., Haliw v Sterling Heights, 464 Mich 297, 303; 627 NW2d 581 (2001); Nawrocki v Macomb Co Rd Comm, 463 Mich 143, 149; 615 NW2d 702 (2000); Ross v Consumers Power Co (On Rehearing), 420 Mich 567, 618; 363 NW2d 641 (1984). Consequently, because the cra does not recognize sexual orientation discrimination, that act cannot be construed as providing a basis for governmental agencies to create such a cause of action.

11 We make no determination regarding the validity of the city’s attempt in its charter to provide a cause of action for sex discrimination, a protection similarly provided by the CRA. That claim is not before us. However, in keeping with this opinion, we note that, at least in regard to governmental immunity, a city may not alter in any respect its liability excepted from governmental immunity by the Legislature without express authority to do so.

 To be certain, we emphasize that our opinion does not address whether a city can create rights, protect against discrimination, or create a cause of action against a nongovernmental entity. Preemption of civil rights, by either the constitution or the Civil Rights Act, is not addressed by our opinion. Rather, our analysis concerns only governmental immunity and the city’s lack of authority to create a cause of action against a governmental entity in light of state governmental immunity law. Accordingly, should there be any question concerning the scope of our holding, we hold that any attempt by the city to create a cause of action against itself in its charter for sexual orientation discrimination is preempted by the governmental tort liability act. We have not addressed whether the cra preempts a city from creating additional civil rights or protecting them through means other than the creation of a private cause of action, nor have we addressed whether a city can create a cause of action against a nongovernmental defendant. Those questions are not before us.

 We note that the city raised governmental immunity as a defense in the trial court, but failed to argue this issue in the Court of Appeals or in this Court. In light of our holding that governmental immunity is not an affirmative defense, but a characteristic of government, failure to assert its immunity on appeal does not preclude the Court from considering it now.

 “Unlike other claims of immunity, sovereign and governmental immunity are not affirmative defenses, but characteristics of government which prevent imposition of tort liability.” Id. at 261, n 35 (citations omitted).

 “Unlike a claim of individual immunity, sovereign and governmental immunity are not affirmative defenses, but characteristics of government which prevent imposition of tort liability. A plaintiff therefore bears the burden of pleading facts in the complaint which show that the action is not barred by the governmental immunity act.” Id. at 344, n 10.

16 The McCummings Court also amended MCR 2.111(F)(3) to reflect its holding. Id. at 412.

 More important, notwithstanding that governmental immunity is now established by a legislative act rather than the common law, we hold that the Legislature is within its inherent constitutional authority to structure governmental immunity solely as it deems appropriate. Where the Legislature has afforded municipalities the protection of governmental immunity *203 and done so in a comprehensive fashion as it has done in the gtla, the governmental immunity as set forth in the gtla is a characteristic of government.

 We note that requiring the plaintiff to bear the burden of pleading in avoidance of governmental immunity is also consistent with a central purpose of governmental immunity, that is, to prevent a drain on the state’s financial resources, by avoiding even the expense of having to contest on the merits any claim barred by governmental immunity.

 In overruling McCummings, the Court is mindful of the doctrine of stare decisis. Stare decisis, however, is not meant to be mechanically applied to prevent the Court from overruling earlier erroneous decisions. Robinson v Detroit, 462 Mich 439, 463; 613 NW2d 307 (2000). Rather, stare decisis is a “principle of policy” not “an inexorable command,” and the Court is not constrained to follow precedent when governing decisions are badly reasoned. Id. at 464. We conclude that it is appropriate to overrule McCummings despite stare decisis because that case was both badly reasoned and inconsistent with a more intrinsically sound prior doctrine and the actual text of the gtla.

 We apply this holding to plaintiff’s sexual orientation claim, but remand to the Court of Appeals for reconsideration of plaintiff’s other claims, as indicated previously. See n 1. With the exception of her sexual orientation discrimination claim against the city, which is disposed of in this opinion, plaintiff shall be allowed to amend her complaint to attempt to plead in avoidance of governmental immunity in regard to her other claims.
As to all other cases pending that involve governmental immunity, plaintiffs shall be allowed to amend their complaints in order to plead in avoidance of governmental immunity. If a case is pending on appeal and governmental immunity is a controlling issue, the Court of Appeals may remand to allow amendment. As MCR 2.111(F)(3) encompasses other species of “immunity granted by law,” but does not explicitly refer to governmental immunity, it is not necessary to amend the court rule because of our holding.

 Justice Taylor. . . . I’ve got a question which is on a little different track. Pompey and Holmes in their most elementary reading give private causes of action for civil rights problems. They, however, give that cause of action to one citizen against another. One of the old really venerable principles of law is of course that the government can only be sued when it allows itself to be sued. Why is it not the case that Pompey and Holmes could be left entirely intact and a court hold that whatever they said, they never abrogated the immunity that a government has that it can only eliminate expressly, that is the ability to not be sued. Said better, why wouldn’t it be a sensible thing for a court to hold that whatever *207 Pompey and Holmes said, they never gave authority to sue a city or any other kind of government, and there is nowhere in the statutes or the constitution where governmental immunity in this regard has been abrogated. And we always have to read our law, I think, our case law is that we always tilt in the direction of immunity.
Justice Young-. Why do you read this provision [cra] as abrogating governmental immunity? ....
* ** *
Justice Markman: But Justice Taylor’s question as I understand is a more generic question .... It’s whether the municipality can create any cause of action that will burden the sovereign to a greater extent.

 For example, Justice Cavanagh cites People v Hardiman, 465 Mich 902; 638 NW2d 744 (2001), as an example of this Court asking the parties if a precedent should be overruled, People v Atley, 392 Mich 298; 220 NW2d 465 (1974). We note that Justice Cavanagh agreed that Atley should be overruled in his partial concurrence in Hardiman. 466 Mich 417, 432; 646 NW2d 158 (2002).
Similarly, Justice Cavanagh criticizes this Court for asking the parties to brief whether the federal subjective entrapment test should be adopted in Michigan in our grant order in People v Johnson, 466 Mich 491; 647 NW2d 480 (2002). 465 Mich 911 (2001). However, when Justice Cavanagh was in the majority, the Court asked the parties to do the very same thing in People v Jamieson, 436 Mich 61; 461 NW2d 884 (1990). 433 Mich 1226 (1989).
Finally, we note that in regard to the majority deciding issues not briefed by the parties, Justice Cavanagh recently authored the opinion in Stanton v Battle Creek, 466 Mich 611; 647 NW2d 508 (2002), in which this Court decided an issue that was never briefed by the parties. That is, applying the common meaning of “motor vehicle” to determine whether the term encompasses a forldift.