# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL A RAY and JACQUELINE M RAY,
as co-conservators for KERSCH RAY, a minor,

Plaintiffs-Appellees,

v

ERIC SWAGER,

Defendant-Appellant,

and

SCOTT ALLEN PLATT, HEATHER MARIE
PLATT, AND LIBERTY MUTUAL
INSURANCE COMPANY,

Defendants.

FOR PUBLICATION
October 24, 2017

No. 322766
Washtenaw Circuit Court
LC No. 12-001337-NI

ON REMAND

Before: BOONSTRA, P.J., and SAAD and HOEKSTRA, JJ.

BOONSTRA, P.J. (*concurring*).

I concur with the majority opinion, but write separately to emphasize the following additional points.

First, courts must be ever vigilant to decide cases based on legal merits, not emotion. This case presents an incident that by any measure was nothing short of tragic, and one young man and his family will suffer a lifetime of consequences that the rest of us can at best only imagine. In the face of such tragedy, judges should be appropriately sympathetic. Human empathy survives the donning of a black robe. That said, it is equally true (though perhaps less understood) that in a world of pure legal issues—such as that of an appellate court whose charge is to assess whether legal error occurred in a lower court—even sympathetic judges must set

-1-

emotion aside and dispassionately decide the legal issues presented without bias or favor toward any party. Appeals to emotion, while understandable, belong elsewhere.[1]

Second, I am compelled to suggest that this Court and the trial courts of this state would benefit from further articulation of the framework that the Supreme Court outlined in its recent decision in this case. See *Ray v Swager*, __ Mich__; __ NW2d__ (2017) (Docket No. 152723).[2] While the Majority indicates that its decision was intended "to clarify the role that factual and legal causation play when analyzing whether a defendant's conduct was 'the proximate cause' of a plaintiff's injuries under the [governmental tort liability act (GTLA)]", *id.*, slip op at 8 (footnote omitted), I am convinced that I am far from alone in scratching my head as I attempt to envision how that framework will (and indeed how it can) be applied in the trial courts of this state.[3] Indeed, in my view, the Dissent was appropriately concerned that the approach of the Majority "will almost inevitably result in jurisprudential confusion and upset in lower courts." *Id.*, slip op at 21 n 25 (WILDER, J., *dissenting*). While I appreciate that the Majority did not share the Dissent's concern, *id.*, slip op at 10 n 43, the Majority also expressly "decline[d] to address how a court ought to decide, in a case in which there is more than one proximate cause, whether the defendant's conduct is "*the* proximate cause." *Id.*, slip op at 8 n 26.

Why do I envision *Ray* resulting in confusion below? Because, respectfully, the Majority does not, in my judgment, achieve the well-intentioned clarity that it sought. It did appropriately recognize that long-standing confusion has existed in the caselaw of this state (and elsewhere) because courts have at various times given the term "proximate cause" two entirely distinct (and inconsistent) meanings.[4] Such confusion indeed merits clarification. To some extent, the

---

[1] In other words, appellate courts should be mindful of Justice Holmes's observation made over a century ago: "Great cases, like hard cases, make bad law. For great cases are called great, not by reason of their real importance in shaping the law of the future, but because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgment. These immediate interests exercise a kind of hydraulic pressure which makes what previously was clear seem doubtful, and before which even well settled principles of law will bend." *Northern Securities Co v United States*, 193 US 197, 400-401; 24 S Ct 436; 48 L Ed 679 (1904) (HOLMES, J., dissenting).

[2] Four Justices joined in the majority opinion. Three Justices joined in the dissenting opinion. To avoid confusion, I will refer to the majority opinion as "the Majority" or "the Court" and to the dissenting opinion as "the Dissent."

[3] While the view of the Majority prevailed and its opinion therefore represents precedent that binds the lower courts, I would suggest that the very nature of the Court's 4-3 split on this issue and the manner in which the Majority and the Dissent seem to talk past each other without really joining issue, confirm that confusion continues to reign, and that it will continue to rain down upon the lower courts until the legal framework is further clarified.

[4] See, e.g., *id.*, slip op at 7 ("We recognize that our own decisions have not always been perfectly clear on this topic given that we have used 'proximate cause' both as a broader term referring to factual causation and legal causation together and as a narrower term referring only to legal

Majority (as well as the Dissent) achieve some clarification on that score simply by acknowledging and addressing the past discordant uses of the term "proximate cause."[5]

However, I would respectfully suggest that we have not yet achieved clarity with regard to the meaning of "the proximate cause" in the GTLA. See MCL 691.1407(2)(c). The Majority and the Dissent seem to agree that the dispositive issue is what the Legislature intended when in 1986 it adopted a "narrow exception" to the "broad immunity" that is afforded to governmental actors for the consequences of any "gross negligence," see, e.g., *id.*, slip op at 14; *id.*, slip op at 19 (WILDER, J., *dissenting*), and therefore what the Legislature intended when it limited the liability flowing from that narrow exception to "conduct . . . that is *the proximate cause* of the injury or damage." MCL 691.1407(2)(c) (emphasis added). But the Majority and the Dissent disagree about what the Legislature in fact intended by the term "the proximate cause."

Resolving that dispute is obviously above my pay grade. I will therefore endeavor only to point out some of the problems that I foresee as the lower courts attempt to follow the Court's new framework. In defining "proximate cause" as "legal causation" (thus abandoning the alternative description of "proximate cause"—as encompassing both factual causation and legal causation together— that the Court recognized it had sometimes employed in earlier decisions), the Court noted that "[p]roximate cause . . . 'involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences.' " *Id.*, slip op at 7 (quoting *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1992)). Further, the Court stated:

> [P]roximate cause, that is legal causation, . . . requires a determination of whether it was foreseeable that the defendant's conduct could result in harm to the victim. A proper legal causation inquiry considers whether an actor should be held legally responsible for his or her conduct, which requires determining whether the actor's breach of a duty to the plaintiff was a proximate cause of the plaintiff's injury. [*Id.*, slip op at 8 (footnotes omitted).]

At the outset, I foresee confusion arising from what I believe will be perceived as a circularity of reasoning in the latter sentence of this quotation. That is, the Court seems to be saying that whether conduct is a "proximate cause" is to be determined by assessing whether the actor "should be legally held responsible," but that one determines whether an actor should be held legally responsible by assessing whether his conduct was a "proximate cause." This

---

causation."); *id.* at 10 ("We recognize that our caselaw is not without its blemishes."). See also, *id.*, slip op at 17 n 8 (WILDER, J., *dissenting*) (noting "the confusion wrought by the duality of meaning we have varyingly ascribed in our negligence jurisprudence to the phrase 'proximate cause . . . ").

[5] Indeed, the Dissent suggests that "because of the confusion wrought by the duality of meaning [of] 'proximate cause, it would arguably be a best practice to discontinue the use of that phrase entirely." *Id.*, slip op at 17 n 8 (WILDER, J., *dissenting*) (citation omitted). There may be wisdom in that. But, for now, we remain trapped in a "proximate cause" world.

statement strikes me as the equivalent of the tautological equation, "If A, then B. If B, then A." Its meaning and the reasoning in support of it appear unclear. What is a lower court to do?

I also see confusion arising from the Court's determination not to provide guidance for how to determine which of potentially multiple proximate causes is "*the* proximate cause" under the GTLA. The Court repeatedly re-endorsed its earlier definition of "the proximate cause" as "the one most immediate, efficient, and direct cause of the injury . . . ." *Id*., slip op at 5, 8, 11, 13-15, quoting *Robinson v Detroit*, 462 Mich 439, 462; 613 NW2d 307 (2000). However, as noted, the Court declined to address how a determination of "the proximate cause" should be made, instead stating, "For today, it is enough to clarify that only another legal cause can be more proximate than the defendant's conduct." *Id*., slip op at 8. At the same time, the Court stated that while a cause necessarily must be a "factual cause" before it can be a "proximate cause" (meaning legal cause), " 'the proximate cause' is not determined by weighing factual causes." *Id*., slip op at 7-8. Further, "[d]etermining proximate cause under the GTLA, or elsewhere, does not entail the weighing of factual causes but instead assesses the legal responsibility of the actors involved." *Id*., slip op at 11. Still further, the Court found error in this Court's "attempt[] to discern whether any of the other factual causes was a more direct cause of plaintiff's injury than defendant's action." *Id*., slip op at 12. Rather, the Court stated:

> Determining whether an actor's conduct was "the proximate cause" under the GTLA does not involve a weighing of factual causes. Instead, so long as the defendant is *a* factual cause of the plaintiff's injuries, then the court should address legal causation by assessing foreseeability and whether the defendant's conduct was *the* proximate cause. [*Id*.]

I glean from this that lower courts are being directed, in assessing "the proximate cause," to ignore, from a *factual* standpoint, whether a cause is "the one most immediate, efficient, and direct cause of the injury," *id*., slip op at 5, 8, 11, 13-15, quoting *Robinson*, 462 Mich at 462, in favor of assessing, from a foreseeability standpoint, whether a cause is "the one most immediate, efficient, and direct cause of the injury . . . ." *Id*., slip op at 5, 8, 11, 13-15, quoting *Robinson*, 462 Mich at 462. What this means is, to me, far from clear. It appears to mean that courts must compare *legal* causes, not *factual* causes (notwithstanding that, as the Court explained, a cause must be a factual cause before it can be a legal cause). And a legal cause appears to be one from which it was foreseeable that injury could result, such that it would be appropriate to hold the actor legally responsible for his or her conduct. But where there are multiple such legal causes, what is the basis of the comparison? Is it, for example, "from which of the legal causes was it most foreseeable that injury would result?" If so, how is a court to make such a determination? Is it simply a subjective assessment of which actor one feels should most be held legally responsible? And how does foreseeability, or relative foreseeability (if such can be determined), or a subjective assessment of the most responsible actor, translate into a test that supposedly inquires into whether a cause is "the one most immediate, efficient, and direct cause of the injury . . ."? *Id*., slip op at 5,8,11, 13-15, quoting *Robinson*, 462 Mich at 462. Don't those descriptors by their very nature require a factual assessment?

I also foresee confusion arising from the Court's statement that "before an actor can be a proximate cause, there must be the prerequisite determination that the actor was negligent—that is, that the actor breached a duty." *Id*., slip op at 12. The Court made this assertion without

-4-

citation to any authority. Does this mean that all factual disputes regarding negligence must be resolved before courts can even consider issues of proximate cause? Does this mean, practically speaking, that issues of proximate cause generally cannot be decided before trial? Does this run counter to the intent of the GTLA to "prevent a drain on the state's financial resources, by avoiding even the expense of having to contest on the merits any claim barred by governmental immunity" by treating government tortfeasors different than private ones? *Costa v Community Emergency Med Servs,* Inc, 475 Mich 403, 409-410; 716 NW2d 236 (2006), quoting *Mack v Detroit*, 467 Mich 186, 203 n 18; 649 NW2d 47 (2002), and citing *Robinson*, 262 Mich at 459.

Does this also mean that for every injury, someone must have been negligent? What if there were intervening (albeit factual) causes that were more "immediate, efficient, and direct," *Id*., slip op at 5, 8, 11, 13-15, quoting *Robinson*, 462 Mich at 462, but that were not the result of negligence? Must those causes now be ignored in favor of assigning liability to a less immediate, efficient, and direct cause that did involve negligence? I note that the Court, in declaring that "nonhuman and natural forces, such as a fire, cannot be considered 'the proximate cause' of a plaintiff's injuries for the purposes of the GTLA," also stated that "these forces bear on the question of foreseeability, in that they may constitute superseding causes that relieve the actor of liability if the intervening force was not reasonably foreseeable." *Id*., slip op at 11 (footnote omitted). But the Court did not appear to acknowledge any corresponding relief of liability where there is a superseding cause by a non-negligent human actor. See *id*., slip op at 11 (stating that "only a human actor's breach of a duty can be proximate cause" but discussing only "nonhuman and natural forces" as superseding causes.).[6] Was it the Court's intent to exclude such a possibility? Would that mean that whenever there is an injury, someone must be held accountable, such that even where there is an intervening non-negligent human cause that may be the "most immediate, efficient, and direct cause of the injury," we must look beyond it to assign liability to a negligent human actor (even though the negligent actor's conduct may have been a less immediate, efficient, and direct cause)?

I also foresee confusion arising from the Court's introduction of a new but undefined term: "potential proximate cause." Specifically, the Court directed that "determin[ing] whether [a] defendant's actions were '*the* proximate cause' . . . would require considering [the] defendant's actions alongside any other potential proximate causes to determine whether [the] defendant's actions were, or could have been, 'the one most immediate efficient, and direct cause' of the injuries." *Id*., slip op at 13, quoting *Robinson*, 462 Mich at 446. But what is a "*potential* proximate cause"? Does the Court mean "*a* proximate cause" that is potentially "*the* proximate cause"? Does the Court mean a *factual* cause, given that the Court stated that "factual causation is a condition precedent to proximate cause," that "one's conduct cannot be *a* or *the* 'proximate cause' of a plaintiff's injury without also being a factual cause thereof," but also that

---

[6] Compare with 2 Restatement of Torts, 2d, § 440 (defining "superseding cause" as "an act of a *third person or other force* which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." (Emphasis added)); see also Restatement of Torts, 2d, § 442A, comment a (noting that an intervening force may be "a force of nature, or the act of a human being, or of an animal).

"just because something is a factual cause of an injury does not mean it is *a* or *the* 'proximate cause' thereof"? Yet the Court also said that "[d]etermining whether an actor's conduct was 'the proximate cause' under the GTLA does not involve a weighing of factual causes." *Id.*, slip op at 12. What precisely, then, does one weigh when weighing *potential* proximate causes?

For all of these reasons and more, I fear that the Court's opinion raises more questions than it answers. And I fear that the result may be that trial courts will throw up their hands and simply allow everything to proceed to trial, even when circumstances may not warrant. Perhaps it is in part for this reason that the Dissent characterizes the Majority as have "massively expand[ed] the exception to governmental immunity provided by MCL 691.1407(2)(c)." *Id.*, slip op at 22 (WILDER, J., *dissenting*).

Finally, for the reasons stated, and because it is evident that the Courts, including the Justices of our Supreme Court, are unable to agree regarding the intent of the Legislature in this regard, I implore the Legislature to state its intent expressly. It is the Legislature that created the "narrow exception" to the "broad immunity" afforded for gross negligence of governmental actors under MCL 691.1407(2)(c). And it is the Legislature that can avoid further and prolonged judicial wrangling over legislative intent, and further confusion in the trial courts, by restating its intent clearly and explicitly (and perhaps, as the Dissent suggests, without reference to the much-maligned term, "proximate cause").

/s/ Mark T. Boonstra