*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOSETTE HARRIS,

UNPUBLISHED
May 12, 2022

Plaintiff-Appellee,

v

No. 356974
Wayne Circuit Court
LC No. 20-007960-NO

CITY OF DETROIT, doing business as
GETHSEMANE CEMETERY AND
CREMATORY,

Defendant-Appellant

and

ST ENTERPRISES I, LLC, ENDURING
MEMORIES CEMETERY MANAGEMENT
COMPANY, INC., and O. H. PYE III FUNERAL
HOME, INC.,

Defendants.

Before: JANSEN, P.J., and CAVANAGH and RIORDAN, JJ.

PER CURIAM.

Defendant, the city of Detroit, doing business as Gethsemane Cemetery and Crematory, appeals by delayed leave granted[1] the order denying the City's motion for summary disposition. On appeal, the City argues that the trial court erred by denying its motion because plaintiff, Josette Harris, had not pleaded in avoidance of governmental immunity, and the City is not liable for the negligence of its independent contractors, defendants, ST Enterprises I, LLC, and Enduring Memories Cemetery Management Company, Inc. We reverse.

---

[1] *Harris v Detroit*, unpublished order of the Court of Appeals, entered July 6, 2021 (Docket No. 356974).

-1-

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the apparent loss of the body of decedent, Delmore Harris Jr., at a cemetery owned by the City, Gethsemane Cemetery and Crematory. After the death of her husband, in March 2020, plaintiff contacted O. H. Pye, III Funeral Home to handle her husband's funeral and burial. The funeral was held at a church off-site, and then decedent was moved by the funeral home to the cemetery for additional prayers in the chapel. After the prayers, a man who appeared to be an undertaker informed plaintiff that the grave for decedent had not yet been dug, and burial would be delayed approximately one day.

After waiting a few days, plaintiff attempted to contact the cemetery to inquire into her husband's burial location, but was unable to reach anyone until June 2020, when an individual informed plaintiff that her husband was not buried at the cemetery. Two days later, plaintiff went to the cemetery to inquire into her husband's burial location and was again told he was not there. One of the employees with whom plaintiff spoke provided plaintiff with the name and phone number of a City employee, who plaintiff called that day. The employee promised to look into the situation and call plaintiff back, but never did.

Plaintiff filed a complaint, alleging (1) breach of the duty of reasonable care/negligence, (2) intentional or negligent mutilation of a dead body or tortious interference with a dead body, (3) intentional infliction of emotional distress, (4) negligent infliction of emotional distress, and (5) breach of contract.

In September 2020, the cemetery's manager sent a letter to the City's counsel, indicating the location of decedent's grave in the cemetery. Plaintiff moved to disinter decedent's remains in October 2020, expressing doubt that the grave actually contained decedent. The trial court ordered the disinterment and reinterment of decedent, and the remains were identified as decedent's in December 2020.

The City moved for summary disposition under MCR 2.116(C)(7), (8), and (10), asserting that (1) it was protected by governmental immunity under the Michigan Governmental Tort Liability Act (GTLA), MCL 691.1401 *et seq.*, and plaintiff had not pleaded in avoidance of this immunity; (2) it did not have a contract with plaintiff; and (3) it could not be held vicariously liable for the torts of its independent contractors, ST Enterprises and Enduring Memories. The City stated it could not be liable for the negligence of its independent contractors because they were not engaged in an inherently dangerous activity, and the City did not have control over their actions in the workplace. The City further alleged that plaintiff's claims were barred by governmental immunity because she failed to plead in avoidance of it. The City asserted the proprietary function exception was inapplicable because the City did not make a profit from the cemetery, had operated the cemetery at a loss for the preceding five years, and the use of the cemetery's income to pay for its operating costs did not render it a profit-making activity.

Plaintiff responded, arguing that the City's contracts with its contractors gave the City control over their operations, and the City represented to the public that it controlled the cemetery. Plaintiff acknowledged the extent of control the City exerted over the cemetery was still unknown because discovery had not concluded, but argued that she had met her burden of showing a genuine issue of material fact existed regarding the City's control over the cemetery. Plaintiff further

argued that the City was not entitled to governmental immunity because the proprietary function exception applied. Plaintiff argued that she had satisfied her burden of establishing a genuine issue of material fact regarding whether the City's purpose in operating the cemetery was proprietary, and, because she stated a claim that fits within an exception to governmental immunity, she had pleaded in avoidance of it. Plaintiff further asserted that if the trial court determined she had not adequately pleaded in avoidance of governmental immunity, the trial court should grant her leave to amend her complaint under MCR 2.118 and MCR 2.116(I)(5) because none of the particularized reasons for denial were present.

The City replied, asserting that plaintiff failed to recognize the retained control exception regarding liability for the actions of an independent contractor is limited to cases involving construction. The City argued that even if the retained control exception did apply, plaintiff did not provide the requisite documentary evidence showing that the City maintained control over the cemetery's operations, and asserted it did not have control over the cemetery's operations or over the actions of its independent contractors in maintaining the cemetery. The trial court denied the City's motion without providing any explanation for its decision.

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision to grant or deny summary disposition." *Broz v Plante & Moran, PLLC*, 331 Mich App 39, 45; 951 NW2d 64 (2020). "In so doing, we review the entire record to determine whether the moving party was entitled to summary disposition." *Id.* Summary disposition under MCR 2.116(C)(7) is appropriate based on immunity granted by law. "When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them." *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010) (footnote and citations omitted). "If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact." *Id.* at 429.

> "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate." [*Id.* (footnotes omitted).]

"Governmental immunity is a question of law that is also reviewed de novo on appeal." *Kendricks v Rehfield*, 270 Mich App 679, 682; 716 NW2d 623 (2006).

## III. ANALYSIS

The City argues that the trial court erred when it denied the City's motion for summary disposition on the grounds of governmental immunity and because it was not vicariously liable for

the tortious conduct of its independent contractors. We agree that the City was entitled to summary disposition regarding its claim of governmental immunity.[2]

"[G]overnmental immunity is a characteristic of government." *Mack v Detroit*, 467 Mich 186, 198; 649 NW2d 47 (2002). Because of this, "a party suing a unit of government must plead in avoidance of governmental immunity." *Id.* at 203. "A plaintiff pleads in avoidance of governmental immunity by stating a claim that fits within a statutory exception or by pleading facts that demonstrate that the alleged tort occurred during the exercise or discharge of a nongovernmental or proprietary function." *Id.* at 204.

Under the GTLA, "[e]xcept as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). The City is a governmental agency as defined in the GTLA, MCL 691.1401(a), (d), and (e). Additionally, " '[g]overnmental function' means an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCL 691.1401(b). The City's operation of the cemetery constitutes a governmental function as provided by the Michigan Constitution: "Any city or village may acquire, own, establish and maintain, within or without its corporate limits, parks, boulevards, cemeteries, hospitals and all works which involve the public health or safety." Const 1963, art 7, § 23. Therefore, the City's ownership and operation of the cemetery is protected from tort liability, subject to the GTLA's exceptions. MCL 691.1407(1).

The proprietary function exception of the GTLA states:

> The immunity of the governmental agency shall not apply to actions to recover for bodily injury or property damage arising out of the performance of a proprietary function as defined in this section. Proprietary function shall mean any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency, excluding, however, any activity normally supported by taxes or fees. No action shall be brought against the governmental agency for injury or property damage arising out of the operation of proprietary function, except for injury or loss suffered on or after July 1, 1965. [MCL 691.1413.]

"Therefore, to be a proprietary function, an activity: (1) must be conducted primarily for the purpose of producing a pecuniary profit; and (2) it cannot be normally supported by taxes and fees."[3] *Herman v Detroit*, 261 Mich App 141, 145; 680 NW2d 71 (2004) (quotation marks and citation omitted). This Court has established specific factors to consider in determining whether an activity is a proprietary function:

---

[2] Our conclusion renders discussion of the City's alternative argument regarding vicarious liability unnecessary.

[3] Because the evidence provided indicates that the City did not have a pecuniary motive in operating the cemetery, the prong regarding taxes and fees need not be addressed.

The first prong of the proprietary function test has two relevant considerations. First, whether an activity actually generates a profit is not dispositive, but the existence of profit is relevant to the governmental agency's intent. An agency may conduct an activity on a self-sustaining basis without being subject to the proprietary function exemption. Second, where the profit is deposited and where it is spent indicate intent. If profit is deposited in the general fund or used on unrelated events, the use indicates a pecuniary motive, but use to defray expenses of the activity indicates a nonpecuniary purpose. To be excluded from the proprietary function exception to immunity, an activity need not actually be supported by taxes or fees if it is a kind normally supported by taxes or fees. However, immunity for an activity that is a governmental function can still be forfeited if conducted for profit in such a scope as to render it a private profit-making enterprise. [*Id.* at 145-146 (citations omitted).]

Plaintiff did not satisfy her burden of pleading in avoidance of governmental immunity. Even under the MCR 2.116(C)(7) standard of taking plaintiff's allegations as true, *Dextrom*, 287 Mich App at 428, the term "governmental immunity" is not mentioned anywhere in plaintiff's second amended complaint, nor is the term "proprietary function," or any allegations of the City's purpose of operating the cemetery for profit. Plaintiff conceded to the City's point that the cemetery had been operated at a loss for the past five years, but argued, without introducing any evidence, that because the presence or lack of a profit is not dispositive in determining whether an activity is a proprietary function, *Herman*, 261 Mich App at 145, a genuine issue of material fact existed as to whether the activity was pecuniary.

The trial court was obligated to consider the entire record, *Broz*, 331 Mich App at 45, including "any affidavits, depositions, admissions, or other documentary evidence . . . to determine whether there is a genuine issue of material fact," *Dextrom*, 287 Mich App at 429. Except for the City's assertion that the cemetery was operating at a loss, plaintiff provided no evidence, nor did she make any allegations in her complaint, in support of her argument that the City's operation of the cemetery constituted a proprietary function. Plaintiff did not introduce evidence of where the cemetery's income was deposited or how it was used, meaning, while not dispositive generally, the only evidence the trial court had at its disposal concerning this issue was the cemetery's monetary losses, which support the City's contention that the cemetery's operation was not a proprietary function.[4] *Herman*, 261 Mich App at 145.

Plaintiff argues that should this Court determine that she failed to plead in avoidance of governmental immunity, she should be granted leave to amend her complaint. MCR 2.118(A)(2)

---

[4] This Court granted the City's motion to expand the record on appeal to include further documentary evidence regarding the operation of the cemetery. *Harris v Detroit*, unpublished order of the Court of Appeals, entered April 12, 2022 (Docket No. 356974). We have reviewed the exhibit, and note that the affidavit of the City employee, Brad Dick, provides that the purpose of the cemetery was never to generate profits, nor has the cemetery generated any profit in the last six years. This supports the City's argument that the proprietary function exception to governmental immunity does not apply.

permits a party to amend a pleading by leave of court, which should be "freely given when justice so requires." A party's motion to amend should only be denied for certain, particularized reasons, including:

> [1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendments previously allowed, [4] undue prejudice to the opposing party by virtue of allowance of the amendment, [and 5] futility. . . . [*Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997) (quotation marks and citation omitted, alterations in original).]

The City's arguments that permitting plaintiff to amend her complaint would cause undue delay and would be inappropriate because of her failures to cure the deficiencies in her earlier amended complaints lack merit. First, the two amended complaints were not amended substantively. They were only amended to add additional defendants as they were brought to plaintiff's attention. Second:

> Delay, alone, does not warrant denial of a motion to amend. However, a court may deny a motion to amend if the delay was in bad faith or if the opposing party suffered actual prejudice as a result. "Prejudice" in this context does not mean that the allowance of the proffered amendment may cause the opposing party to ultimately lose on the merits. Rather, "prejudice" exists if the amendment would prevent the opposing party from receiving a fair trial[.] [*Id*. at 659 (citations omitted).]

There is no evidence that the City would be deprived of a fair trial should plaintiff be permitted to amend her complaint. The general delay of permitting plaintiff to amend her complaint does not constitute undue delay under *Weymers*.

However, plaintiff is not entitled to amend her complaint because any amendment would be futile in the context of governmental immunity. There is no indication of the City's purpose of operating the cemetery for profit in the lower court record. The only evidence applicable to the proprietary function exception is the City's assertion that the cemetery operated at a loss for the previous five years. While, again, this is not generally dispositive of the City's intent, *Herman*, 261 Mich App at 145, as the only evidence presented, it must be considered as indicating that the City's intent was not for profit. Plaintiff's argument that the City's motion was premature because discovery had not yet concluded is equally unpersuasive. Plaintiff's first interrogatories and request for production of documents makes no mention of, and does not request any information or documents regarding, the cemetery's operation and profits, nor has plaintiff submitted any other request for such documents after her introduction of the proprietary function exception in her response to the City's motion for summary disposition. Even if the City provided all the evidence plaintiff requested, the lower court record would contain no additional information useful in determining whether the City's operation of the cemetery was pecuniary. Amendment of plaintiff's complaint will not be able to rebut this fact, and is therefore futile. *Weymers*, 454 Mich at 658.

The order denying the City's motion for summary disposition is reversed. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael J. Riordan