# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MERRIMAN, Minors.

UNPUBLISHED
January 3, 2019

No. 344114
Hillsdale Circuit Court
Family Division
LC No. 16-000479-NA

Before: SWARTZLE, P.J., and SAWYER and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor children AM, RM, and TM under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), (j) (reasonable likelihood that children will be harmed if returned to the parent), and (n)(*i*) (conviction of an enumerated crime).[1] Respondent does not challenge the trial court's findings that the above grounds for termination were satisfied. Rather, she only challenges the trial court's finding that termination was in the children's best interests. We affirm.

## I. FACTUAL BACKGROUND

In July of 2016, the Department of Health and Human Services (DHHS) filed petitions seeking jurisdiction over the children, alleging that TM was born positive for THC, respondent repeatedly tested positive for methamphetamine and THC; respondent and her boyfriend, Jeremy Barron, had engaged in multiple domestic violence incidents; the children had been left unsupervised for extended periods and one of the children nearly drowned in a lake; the children were going unfed; mother and her boyfriend used drugs and alcohol heavily; and the children were afraid of Barron. The children's father was incarcerated at the time. After the children were taken into custody, respondent began engaging in therapy and services, making some progress despite continued positive drug screens. In April of 2017, respondent was arrested for the murder of Barron. She eventually pled guilty to second-degree murder for her role in Barron's death, which was an execution-style slaying in which she participated along with

---

[1] As of June 12, 2018, MCL 712A.19b(3)(n) is now designated as MCL 712A.19b(3)(m). See 2018 PA 58.

-1-

another boyfriend, Jay Clark.[2] Thereafter, the trial court and DHHS changed their goals from reunification to termination. In January of 2018, respondent was sentenced to 25 to 40 years' imprisonment. The trial court held a hearing during which it took extensive testimony, and it concluded that the above statutory grounds were established and that the children would be endangered by remaining in respondent's care. It therefore ordered respondent's parental rights terminated, and this appeal followed.

## II. STATUTORY GROUNDS FOR TERMINATION

Because respondent does not challenge the trial court's determination that statutory grounds for termination were established, we may assume that the trial court did not clearly err in making that determination. *In re JS and SM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1998), overruled in part on other grounds by *In re Trejo Minors*, 462 Mich 341, 353; 612 NW2d 407 (2000). While we are concerned that the trial court may have improperly considered the fact that respondent was a victim of domestic violence, *In re Plump*, 294 Mich App 270, 273; 817 NW2d 119 (2011), it is clear from the record that any improper concern with respondent's victimization was at most peripheral. Rather, the children were severely traumatized by repeated instances of exposure to domestic violence, some of which they witnessed and some of which were perpetrated directly against the children by respondent herself. The children were also traumatized by instability in their lives, respondent's use of drugs, and respondent's apparent disinterest in caring for the children or protecting them from harm despite opportunities to do so. Respondent's continued inability to provide a safe and healthy environment for the children, her continued use of illegal and dangerous drugs, and her continued engagement in her own acts of violence are all proper concerns.

In any event, only one statutory basis for termination is sufficient. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). The primary factual predicate for MCL 712A.19b(3)(n)(*i*), conviction of an enumerated crime, was clearly established by respondent's guilty plea to second-degree murder. The trial court did not clearly err in also finding that the children would be harmed by a continued parent-child relationship with respondent.

We are not precluded from considering an issue merely because a party chooses not to raise it. See *Mack v City of Detroit*, 467 Mich 186, 206-209; 649 NW2d 47 (2002). However, we are satisfied from our review of the record that it is unnecessary for us to do so. Despite some misgivings about some of the trial court's reasoning, our review of the record reveals no clear error regarding the trial court's conclusion that at least one statutory ground for termination was established. See *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). The trial court was therefore required to terminate respondent's parental rights if it found that termination

---

[2] Clark was convicted of first-degree murder for his involvement in Barron's death. Clark's appeal from that conviction is presently pending before this Court in Docket No. 343607. Respondent sought to withdraw her plea, which was refused by the trial court. She sought to appeal that refusal, which was denied by this Court and by our Supreme Court. *People v Hoath*, unpublished order of the Court of Appeals, June 29, 2018 (Docket No. 343918); *People v Hoath*, ___ Mich ___; 919 NW2d 75 (2018).

was in the best interests of the children.  MCL 712A.19b(5); *In re Moss*, 301 Mich App 76, 86-90; 836 NW2d 182 (2013).

### III.  BEST INTERESTS OF THE CHILDREN

We review the trial court's decision regarding best interests for clear error.  *In re Trejo Minors*, 462 Mich at 356-357.

It was not disputed that respondent seemingly made meaningful progress up to the point at which she was convicted of, and incarcerated for, the murder.  For example, early in the proceedings, AM, who was eight years old at the time, testified that she believed respondent was totally untrustworthy and had been given "too many chances" already, and that AM flatly did not want to go back with respondent, "ever."  By the time of respondent's arrest, however, respondent was participating actively in counseling with the children, and even AM reported that she wanted to see visits with respondent increased.

Nevertheless, the trial court correctly recognized that the bond between respondent and her children did not exist "in a vacuum," and it alone could not overcome the negative factors of drug use and violence.  The trial court observed that AM's eventual desire to return to respondent was qualified by, "if [respondent] made good choices."  The majority of respondent's random drug screens were either positive or "no call/no show," and she continued to associate with drug users.  Furthermore, despite respondent's apparent progress in her domestic violence services, her participation in the murder reflects poorly on her ability or inclination to "make good choices" or to protect the children from sustaining even more violence-related trauma.  A psychological evaluation of respondent indicated that respondent's own history of trauma, and her established behavior patterns, made her an "extremely difficult case" for effectuating positive change.  There was testimony that the children were *extremely* traumatized, and several experienced attorneys described AM's testimony as disturbing or chilling, further reflecting the deep and lasting harm the children sustained while living with respondent.

Neither incarceration alone nor criminal history alone are sufficient bases for terminating a parent's parental rights.  *In re Mason*, 486 Mich 142, 160-165; 782 NW2d 747 (2010). However, they are certainly relevant to the best interests of the children, especially given the testimony that the children, who had already experienced considerable disruption in their lives, needed permanence and stability.  The earliest possible date of respondent's release is in 2042, long after all three children have reached the age of majority.  In the meantime, although respondent sent regular letters to the children, there were some concerns that the contents of those letters were not consistently appropriate, and in any event, it is not possible for respondent to provide *any* kind of home life for the children.  No suitable relatives could be found for placing the children other than, possibly, their father.  The children's father's parental rights were not terminated "yet," but the trial court made it clear that the father was only being given one final chance, with no guarantee that his rights would not eventually be terminated.  In any event, each parent's rights must be considered individually, without consideration of the fitness or unfitness of the other parent.  *In re Sanders*, 495 Mich 394, 422; 852 NW2d 524 (2014). Therefore, the permanency that the children's father *may* be able to provide has no bearing on the fact that respondent cannot provide permanency, stability, or safety for the children.

## IV. CONCLUSION

We do not find clear error in the trial court's finding that, paraphrasing AM's statements, respondent "doesn't make good choices," and its finding that the children would be in "great danger" if returned to respondent's care. A child's "interest in maintaining a relationship with [his or her parent] exists only to the extent that it would not be harmful [to the child]." *In re MU*, 264 Mich App 270, 282; 690 NW2d 495 (2004). Respondent would be incapable of providing the children with the permanence, stability, and safety they need. In contrast, the trial court recognized that the foster family is a good fit for the children, that the children were placed together, and that the foster family was willing to provide permanence by adopting the children. There is no dispute that the foster family provided the children with proper care. The trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Brock A. Swartzle
/s/ David H. Sawyer
/s/ Amy Ronayne Krause

-4-