# Syllabus

Chief Justice:
Bridget M. McCormack

Chief Justice Pro Tem:
David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

Reporter of Decisions:
Kathryn L. Loomis

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

GENESEE COUNTY DRAIN COMMISSIONER v GENESEE COUNTY

Docket No. 156579. Argued on application for leave to appeal April 10, 2019. Decided July 18, 2019.

Genesee County Drain Commissioner Jeffrey Wright and others filed an action in the Genesee Circuit Court against Genesee County and the Genesee County Board of Commissioners, asserting a contract claim and claims for various intentional torts, including conversion and fraud. The drain commissioner and the county jointly purchased group health insurance coverage from Blue Cross Blue Shield of Michigan (BCBSM), and the county administered the plans. After BCBSM determined that the county's collective insurance premiums, including those paid by the drain commissioner, had exceeded the amount that should have been charged, BCBSM refunded the overpayment to the county, which the county deposited into its general fund. The drain commissioner demanded his office's share of the refunded premiums, which the county denied. Plaintiffs filed this action, and defendants moved for summary disposition of the intentional-tort claims and moved for partial summary disposition of the contract claim with regard to the damages sought that extended beyond the six-year period of limitations set forth in MCL 600.5807. The court, Geoffrey L. Neithercut, J., denied the motion with regard to the intentional-tort claims, but the court granted the motion with regard to the contract claim, concluding that damages were limited under MCL 600.5807 to those that accrued after October 24, 2005. The parties appealed in the Court of Appeals. The Court of Appeals, STEPHENS, P.J., and SAAD and BOONSTRA, JJ., affirmed the trial court's grant of partial summary disposition with regard to the contract claim but reversed the trial court's order with respect to the intentional-tort claims, reasoning that those claims had to be dismissed because intentional torts were not stated exceptions under the governmental tort liability act (GTLA), MCL 691.1401 *et seq*. 309 Mich App 317 (2015). As the only remaining plaintiff, the drain commissioner thereafter amended his complaint, claiming that the county (the only remaining defendant) had been unjustly enriched when it retained his office's portion of the refunded health insurance premiums. The county moved for summary disposition of the unjust-enrichment claim, arguing that the unjust-enrichment claim was also barred by the GTLA because the claim was, in effect, a claim for conversion, fraud, or a similar tort; the trial court denied the motion. On appeal, the Court of Appeals, SAWYER, P.J., and SERVITTO and RIORDAN, JJ., affirmed the denial, reasoning that the GTLA did not apply because the unjust-enrichment claim ultimately involved contract liability, not tort liability. 321 Mich App 74 (2017). The county sought leave to appeal, and the Supreme Court ordered and heard oral argument on whether to grant the application or take other action. 501 Mich 1086 (2018).

In an opinion by Chief Justice MCCORMACK, joined by Justices VIVIANO, BERNSTEIN, CLEMENT, and CAVANAGH, the Supreme Court, in lieu of granting leave to appeal, *held*:

Under *In re Bradley Estate*, 494 Mich 367 (2013), claims seeking compensatory damages for breach of contract and claims seeking a remedy other than compensatory damages are not barred by the GTLA. The drain commissioner's unjust-enrichment claim was not barred by the GTLA because the claim was neither a tort nor based in contract and the drain commissioner sought restitution, not compensatory damages. To the extent that *Bradley Estate* implied that tort liability for purposes of the GTLA includes noncontractual liability without qualification, the case overstated the scope of tort liability.

1. MCL 691.1407(1) states that except as otherwise provided by the GTLA, a governmental agency is immune from tort liability if the agency is engaged in the exercise or discharge of a governmental function. The GTLA encompasses all legal responsibility for civil wrongs, other than a breach of contract, for which a remedy may be obtained in the form of compensatory damages. For that reason, claims seeking compensatory damages for breach of contract and claims seeking a remedy other than compensatory damages are not barred by the GTLA.

2. Unjust enrichment is different from actions in tort and contract. Restitution is the remedy for unjust enrichment; an unjust-enrichment claim does not seek compensation for an injury—that is, it does not seek compensatory damages—but to correct against one party's retention of a benefit at another's expense. In contrast, in a tort action, an injured party may seek compensatory damages for an injury caused by the breach of a legal duty to compensate the injured party for the injury caused by the defendant's wrongful conduct. And in a breach-of-contract action, an injured party may also seek compensatory damages for an injury caused by another party's breach of a contractual obligation. Unjust enrichment evolved through the years from being a restitutionary claim with components in law and equity into a unified independent doctrine that uniquely corrects for a benefit received by the defendant rather than correcting for the defendant's wrongful behavior. Therefore, unjust enrichment, with a remedy of restitution, is a cause of action independent of contract or tort; it is neither a tort action nor a contract action, both of which seek compensatory damages. Both the nature of an unjust-enrichment action and its remedy—whether restitution at law or in equity—separate it from tort and contract.

3. In this case, the drain commissioner sought restitution to correct for the benefit the county unfairly received when it retained his office's portion of the refunded premiums. Consequently, because his claim did not seek compensation for an injury flowing from the county's civil wrong, liability was not in tort or contract, and therefore, the GTLA did not bar his unjust-enrichment claim. To the extent that *Bradley Estate* implied that tort liability includes noncontractual liability without qualification, the case overstated the scope of tort liability. *Bradley Estate* did not consider an action like that in this case—wherein liability arose from an unjust benefit received, not from a civil wrong—and the case was distinguishable because the petitioner in that case sought compensatory damages for injuries related to a civil wrong, not restitution.

Affirmed.

Justice MARKMAN, joined by Justice ZAHRA, concurring, agreed with the majority that the county was not entitled to governmental immunity under the GTLA because the drain commissioner's unjust-enrichment claim did not seek to impose tort liability. He wrote separately to express his disagreement with the majority's analysis, particularly its interpretation and application of *Bradley Estate*. Under *Bradley Estate*, for purposes of MCL 691.1407(1), "tort liability" means all legal responsibility arising from a noncontractual civil wrong for which a remedy may be obtained in the form of compensatory damages. To determine whether a claim involves tort liability, a court must consider the nature of the duty that gives rise to the claim and the nature of the liability the claim seeks to impose; if the wrong alleged is based on the breach of a contractual duty, then no tort has occurred and it would be unnecessary to consider the nature of the liability. The drain commissioner's unjust-enrichment claim sought restitution at law on the basis of an implied-in-law contract, which was premised on the common-law action of assumpsit. For that reason, Justice MARKMAN agreed with the Court of Appeals that the drain commissioner's unjust-enrichment claim was premised on a contractual relationship and that the claim was therefore not barred by governmental immunity. Because he reached that conclusion, Justice MARKMAN considered it unnecessary to address whether every claim for unjust enrichment that is not grounded in the common-law action of assumpsit, or is not premised on a contractual relationship, is barred by governmental immunity. Justice MARKMAN disagreed with the majority's attempt to limit the scope of *Bradley Estate* by removing unjust enrichment from the contract/tort civil-wrong dichotomy and by instead declaring that unjust enrichment was an independent cause of action, outside of tort and contract. The majority's conclusion that unjust enrichment is an independent cause of action was contrary to *Bradley Estate*'s recognition that there are only two classes of wrong for which an individual may demand legal redress: those based on a breach of contract and those that arise independently of contract (that is, in tort). The binary analysis in *Bradley Estate* was clear, and the majority's conclusion that unjust enrichment was an independent cause of action, outside of contract and tort, confused and unsettled this framework. The central purpose of governmental immunity is to reduce depletion of the state's financial resources by avoiding a contest on the merits of those claims that are barred by governmental immunity. The majority's holding opens the door on future claims that other nontraditional tort claims against a public defendant are outside the *Bradley Estate* framework. By failing to treat *Bradley Estate* as legitimate precedent, the majority diminished its holding, incentivized further GTLA litigation over the meaning of "tort liability," imposed greater litigation costs on public defendants (contrary to the GTLA's central purpose), and introduced ambiguity and ad hoc judicial decision-making in the future. While Justice MARKMAN agreed that the drain commissioner's unjust-enrichment claim was not barred by the GTLA, he would have so held on the basis that the drain commissioner sought restitution as a legal remedy in the form of money damages, premised on an actual or implied contractual relationship with the county and that such a claim was not barred by the GTLA.

©2019 State of Michigan

# OPINION

Chief Justice:
  Bridget M. McCormack

Chief Justice Pro Tem:
  David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

FILED July 18, 2019

S T A T E  O F  M I C H I G A N

SUPREME COURT

GENESEE COUNTY DRAIN
COMMISSIONER JEFFREY WRIGHT,

          Plaintiff-Appellee,

and

CHARTER TOWNSHIP OF FENTON,
DENNIS BOW, KARYN MILLER,
BONNIE MATHIS, PAULA ZELENKO,
MARILYN HOFFMAN, LARRY GREEN,
JAKE LAFURGEY, RAY FOUST, DAVID
GUIGEAR, ROBERT M. PALMER, RICK
CARUSO, WILLIAM W. KOVL, MAXINE
ORR, VILLAGE OF GOODRICH,
VILLAGE OF GAINES, VILLAGE OF
LENNON, CHARTER TOWNSHIP OF
MUNDY, TOWNSHIP OF ARGENTINE,
CHARTER TOWNSHIP OF FLINT,
CHARTER TOWNSHIP OF MT. MORRIS,
TOWNSHIP OF GAINES, and CITY OF
FLUSHING,

          Plaintiffs,

v                                                        No. 156579

GENESEE COUNTY,

        Defendant-Appellant,
and

GENESEE COUNTY BOARD OF
COMMISSIONERS,

        Defendant.

---

BEFORE THE ENTIRE BENCH

MCCORMACK, C.J.

In this case, we consider whether a claim for unjust enrichment is barred by the governmental tort liability act (GTLA), MCL 691.1401 *et seq*. A claim for unjust enrichment is neither a tort nor a contract but rather an independent cause of action. And the remedy for unjust enrichment is restitution—not compensatory damages, the remedy for tort. For both reasons, the GTLA does not bar an unjust-enrichment claim.

## I. FACTS AND PROCEDURAL HISTORY

Defendant Genesee County served as an administrator for certain employee health insurance plans. Plaintiff Genesee County Drain Commissioner Jeffrey Wright[1] participated in this plan even though the office of drain commissioner has statutory autonomy from the county. See MCL 46.173. The parties' insurer, Blue Cross Blue Shield of Michigan (BCBSM), conducted a multi-year audit that revealed that the county's

---

[1] The plaintiff's first complaint listed 23 additional individuals and municipalities as plaintiffs, but they are no longer involved in this case. All references in this opinion to "the plaintiff" are to Wright only. The first complaint also listed the Genesee County Board of Commissioners as a defendant, but the plaintiff's second amended complaint dropped the board as a defendant.

collective insurance premiums, including those paid by the plaintiff, significantly exceeded the amount that should have been charged. The county held a public meeting about the overpayment—allegedly totaling millions of dollars—during which it accepted a refund from BCBSM. The county deposited the refund into its general fund.[2] The plaintiff demanded a proportionate share of the refund; the county denied his request, and this lawsuit followed.

The plaintiff's first complaint included claims based in contract and tort (specifically, conversion and fraud). The county moved for summary disposition under MCR 2.116(C)(7) and (8). The trial court held that (1) because of the six-year statute of limitations for breach-of-contract actions in MCL 600.5807, the plaintiff's damages were limited to those that accrued after October 24, 2005, and (2) the GTLA did not bar the plaintiff's tort claims. The Court of Appeals affirmed in part and reversed in part. The panel agreed with the trial court's holding on the contract claim but concluded that the plaintiff's intentional-tort claims were barred by the GTLA. *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App 317, 334; 869 NW2d 635 (2015).

The plaintiff then amended his complaint to add an unjust-enrichment claim, alleging that the county had "wrongfully and unjustly retained a portion of the refunds

---

[2] A "general fund" is "[a] government's primary operating fund; a state's assets furnishing the means for the support of government and for defraying the legislature's discretionary appropriations." *Black's Law Dictionary* (10th ed), p 788. "A general fund is distinguished from assets of a special character[.]" *Id*. Money in a general fund is to consist of funds raised by a governmental unit, "for the conduct of government and for governmental purposes, and not those funds . . . which incidentally fall into the hands of some governmental agent, while such agent is performing his lawful functions." *Pokorny v Wayne Co*, 322 Mich 10, 15; 33 NW2d 641(1948).

under the [BCBSM] Plan that belong to [the plaintiff]," that the county "is not entitled to retain [the plaintiff's] portion of the refunds," that the county had been "unjustly enriched" by its wrongful retention of the plaintiff's portion, and that it would be inequitable for the county to retain the plaintiff's portion.

The county again moved for summary disposition, arguing that the plaintiff's unjust-enrichment claim was also barred by the GTLA. The trial court denied the motion, and the Court of Appeals affirmed. *Genesee Co Drain Comm'r v Genesee Co*, 321 Mich App 74; 908 NW2d 313 (2017). The panel concluded that the GTLA did not apply because "a claim based on the equitable doctrine of unjust enrichment ultimately involves contract liability, not tort liability." *Id*. at 78. The defendant then sought leave to appeal in this Court. We directed the Clerk to schedule oral argument on the application and ordered the parties to address "whether the Court of Appeals erred in holding that the plaintiff's claim of unjust enrichment was not subject to governmental immunity under the [GTLA], see *In re Bradley Estate*, 494 Mich 367 [835 NW2d 545] (2013), because it was based on the equitable doctrine of implied contract at law." *Genesee Co Drain Comm'r v Genesee Co*, 501 Mich 1086 (2018).

## II. THE GTLA AND *IN RE BRADLEY ESTATE*

Whether governmental immunity applies under the GTLA is a question of law that we review de novo on appeal. *Ray v Swager*, 501 Mich 52, 61; 903 NW2d 366 (2017). We review grants and denials of summary disposition de novo too. *Id*. at 61-62. De novo review means that we review the legal issue independently, without required deference to the courts below. *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018).

4

The GTLA provides governmental agencies and their employees with immunity from tort liability when engaged in the exercise of governmental functions. *Ray*, 501 Mich at 62. MCL 691.1407(1) states, "Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function."

In *In re Bradley Estate*, 494 Mich 367, this Court held that an action for civil contempt seeking compensatory damages against the respondent sheriff's department was barred by the GTLA. The Court reasoned that "the GTLA encompasses all legal responsibility for civil wrongs, other than a breach of contract, for which a remedy may be obtained in the form of compensatory damages." *Id*. at 371. Thus, at least two categories of claims are not barred by the GTLA: those seeking compensatory damages for breach of contract and claims seeking a remedy other than compensatory damages.

## III. RESTITUTION AND UNJUST ENRICHMENT

### A. GENERAL PRINCIPLES

Unjust enrichment is a cause of action to correct a defendant's unjust retention of a benefit owed to another. Restatement Restitution, 1st, § 1, comment *a*, p 12. It is grounded in the idea that a party "shall not be allowed to profit or enrich himself inequitably at another's expense." *McCreary v Shields*, 333 Mich 290, 294; 52 NW2d 853 (1952) (quotation marks and citation omitted). A claim of unjust enrichment can arise when a party "has and retains money or benefits which in justice and equity belong to another." *Id*. (quotation marks and citation omitted).

The remedy for unjust enrichment is restitution. See, e.g., *Kammer Asphalt Paving Co, Inc v East China Twp Sch*, 443 Mich 176, 185; 504 NW2d 635 (1993) ("[U]nder the

5

equitable doctrine of unjust enrichment, '[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other.' "), quoting Restatement Restitution, 1st, § 1, p 12 (second alteration in original); *City Nat'l Bank of Detroit v Westland Towers Apartments*, 413 Mich 938, 938 (1982) (discussing "equitable recovery on the claim of unjust enrichment"); 2 Restatement Restitution & Unjust Enrichment, 3d, § 49, p 176 ("A claimant entitled to restitution may obtain a judgment for money in the amount of the defendant's unjust enrichment.").[3]

Contrast this with tort and contract. In a tort action, an injured party may seek damages for an injury caused by the breach of a legal duty. *Wilson v Bowen*, 64 Mich 133, 141; 31 NW 81 (1887). The remedy for the breach is compensatory damages. That is, the defendant compensates the injured party for the injury caused by the defendant's wrongful conduct. *State Farm Mut Auto Ins Co v Campbell*, 538 US 408, 416; 123 S Ct 1513; 155 L Ed 2d 585 (2003); *Rafferty v Markovitz*, 461 Mich 265, 271; 602 NW2d 367 (1999).

---

[3] Restitution can refer both to liabilities and to remedies, leading to misunderstanding about its correct meaning in some contexts. See 1 Restatement Restitution & Unjust Enrichment, 3d, § 1, comment *e*, p 8. This confusion has a likely historical cause: in the centuries before the Restatement, "[s]o long as legal obligations were classified by the procedures available to enforce them, what we now call restitution did not need an underlying theory of liability." *Id*. at § 4, comment *b*, p 29. Today, references to restitution are most common in the remedial context, such as statutes requiring a criminal defendant to pay a victim of his or her crime. See, e.g., MCL 780.766(2). When restitution refers to a cause of action, "[t]he restitutionary remedies and unjust enrichment are simply flip sides of the same coin" because "[t]he generative purpose of a restitutionary remedy is the prevention of unjust enrichment." *Alternatives Unlimited, Inc v New Baltimore City Bd of Sch Comm'rs*, 155 Md App 415, 454; 843 A2d 252 (2004). See also 1 Restatement Restitution & Unjust Enrichment, 3d, § 4, comment *b*, p 29 (explaining that the first Restatement of Restitution, in 1937, adopted the view "that liabilities and remedies drawn from law on the one hand, and equity on the other, were best understood and described as components of a unified law of unjust enrichment").

In a breach-of-contract action, an injured party may seek damages for an injury caused by another party's breach of a contractual obligation. As in tort, the remedy for the breach may be compensatory damages. Am Jur Legal Forms 2d, § 83:2. That is, remedies are "those that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made." *Kewin v Massachusetts Mut Life Ins Co*, 409 Mich 401, 414-415; 295 NW2d 50 (1980), citing 5 Corbin, Contracts, § 1007.

Unjust enrichment, by contrast, doesn't seek to compensate for an injury but to correct against one party's retention of a benefit at another's expense. And the correction, or remedy, is therefore not compensatory damages, but restitution. Restitution restores a party who yielded excessive and unjust benefits to his or her rightful position. 1 Restatement Restitution & Unjust Enrichment, 3d, § 1, comments *d & e*, pp 7-10.

Beyond the differences in remedy, unjust enrichment is a cause of action independent of tort and contract liability. Therefore, the plaintiff's claim for unjust enrichment is not a tort action seeking compensatory damages. And neither is it a contract action seeking compensatory damages. See, e.g., 1 Restatement Restitution & Unjust Enrichment, 3d, § 1, comment *a*, p 3 ("The identification of unjust enrichment as *an independent basis of liability* in common-law legal systems—*comparable* in this respect to a liability in contract or tort—was the central achievement of the 1937 Restatement of Restitution.") (emphasis added); see also *Schirmer v Souza*, 126 Conn App 759, 765; 12 A3d 1048 (2011) (stating that "the doctrine of unjust enrichment is grounded in the theory of restitution, not in contract theory").

7

## B. HISTORICAL CONTEXT

Unjust enrichment's historical roots help make sense of its modern identity. It has a long jurisprudential pedigree marking its development into an independent action with a restitutionary remedy. At the King's Bench, Lord Mansfield described the rationale behind unjust enrichment:

> In one word, the gist of this kind of action is, that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money. [*Moses v Macferlan*, 97 Eng Rep 676, 681; 2 Burr 1005 (KB, 1760).]

Before 1938, when the United States Supreme Court adopted the Federal Rules of Civil Procedure abolishing the division between law and equity, unjust-enrichment claims, though ascribed different labels, proceeded in both courts of law and equity.[4] See, e.g., Murphy, *Misclassifying Modern Restitution*, 55 SMU L Rev 1577, 1599 (2002) (recognizing that "[b]oth the law courts and the equity courts entertained actions that were based on restitutionary principles"); see also *Livingston v Krown Chem Mfg, Inc*, 394 Mich 144, 147-150; 229 NW2d 793 (1975) (discussing the history of the distinction between legal and equitable claims). Claims of law included actions seeking a money judgment, such as for money had and received, money paid, quantum meruit, and quantum valebat.[5]

---

[4] At the end of the nineteenth century, some legal scholars began to recognize that obligations considered quasi-contractual shared an underlying rationale with some equitable remedies in that both sought to repair an unjust enrichment. These ideas developed into the unified law of unjust enrichment and were adopted into the 1937 Restatement of Restitution. 1 Restatement Restitution & Unjust Enrichment, 3d, § 4, comment *b*, p 29.

[5] Limited exceptions to this general rule existed, such as when the money sought to be recovered was taken by abuse of a fiduciary or confidential relationship. See, e.g., *Cigna Corp v Amara*, 563 US 421, 439; 131 S Ct 1866; 179 L Ed 2d 843 (2011).

1 Dobbs, Law of Remedies (2d ed), § 4.1(1), p 556 (stating that "restitution claims for money are usually claims 'at law' "); see also *Misclassifying Modern Restitution*, 55 SMU Law Rev at 1600 (stating that "[t]he actions for money had and received, money paid, quantum meruit, and quantum valebat eventually were catalogued under the rubric of 'quasi-contract,' but it is important to appreciate that these actions were not based on principles of contract, but rather on principles of unjust enrichment" and that "[t]he 'quasi-contract' label apparently resulted from the fact that these actions developed in assumpsit, where contractual actions also developed"). These claims included an action for assumpsit and were quasi-contractual. Quasi-contract doctrine is itself a subset of the law of unjust enrichment. See Dobbs, § 4.2(3), pp 579-581.

By contrast, unjust-enrichment claims based in equity involved remedies other than money judgments, including the establishment of constructive trusts, equitable liens, subrogation, and accounting. Dobbs, § 4.3(1), pp 587-589; see also *Boden v Renihan*, 299 Mich 226, 235-236; 300 NW 53 (1941) (discussing constructive trusts and accounting as remedies for suits brought in equity). Thus, while all quasi-contract is premised on unjust enrichment, not all unjust enrichment is quasi-contract.

Unjust enrichment has evolved from a category of restitutionary claims with components in law and equity into a unified independent doctrine that serves a unique legal purpose: it corrects for a benefit received by the defendant rather than compensating for the defendant's wrongful behavior. Both the nature of an unjust-enrichment action and its remedy—whether restitution at law or in equity—separate it from tort and contract.

9

## C. APPLICATION

The plaintiff claims that the county deposited money belonging to the plaintiff, among others, into its general fund, thereby enriching itself at the plaintiff's expense. Because the county's gain was unjust, the plaintiff seeks restitution through a claim of unjust enrichment. That claim would correct for the unfairness flowing from the county's "benefit received"—its unfair retention of the plaintiff's money, rather than for injury flowing from the county's "civil wrong"; the claim thus would impose no tort (or contract) liability. And the GTLA therefore does not bar it.

To the extent that *In re Bradley Estate* implied that tort liability encompassed noncontractual liability without qualification, our decision overstated the scope of "tort liability." But *Bradley* did not contemplate an action like this one, alleging liability not from a "civil wrong," but rather from a "benefit received."[6] In sum, the plaintiff's unjust-enrichment claim is based on the county's unjust benefit received—outside the scope of "civil wrongs."

And *In re Bradley Estate* is not an obstacle for the plaintiff for another reason. The plaintiff does not seek compensatory damages, but restitution. This Court's application of

---

[6] Because the only issue in *In re Bradley Estate* was whether the GTLA barred the petition for indemnification damages for *civil contempt*, its broader statement that " 'tort liability' as used in . . . the GTLA encompasses all legal responsibility for civil wrongs, other than a breach of contract," *In re Bradley Estate*, 494 Mich at 371, was obiter dictum because it was unnecessary to decide the case once the Court held that "a civil contempt petition seeking indemnification damages under MCL 600.1721" was barred by the GTLA, *id*. at 393. But because the plaintiff's claim is not barred by the GTLA for alternative reasons, as discussed below, and no party asks us to overrule *In re Bradley Estate*, we do not engage this point further.

the GTLA in *In re Bradley Estate* depended on the understanding that the petitioner's civil-contempt petition sought compensatory damages for an injury:

> If [an] action permits an award of damages to a private party *as compensation for an injury* caused by the noncontractual civil wrong, then the action, no matter how it is labeled, seeks to impose tort liability and the GTLA is applicable. [*In re Bradley Estate*, 494 Mich at 389 (emphasis added).]

Thus, our holding in *In re Bradley Estate* simply did not address an action like this one in which the plaintiff is seeking restitution for a benefit unfairly retained by the county, rather than compensatory damages for an injury. Because the plaintiff's unjust-enrichment claim is not a tort in name or in substance, the GTLA does not apply.

## IV. CONCLUSION

Because unjust enrichment sounds in neither tort nor contract and seeks restitution rather than compensatory damages—the GTLA does not bar the plaintiff's claim. We affirm the judgment of the Court of Appeals.

Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

11

S T A T E   O F   M I C H I G A N

SUPREME COURT

GENESEE COUNTY DRAIN
COMMISSIONER JEFFREY WRIGHT,

        Plaintiff-Appellee,

and

CHARTER TOWNSHIP OF FENTON,
DENNIS BOW, KARYN MILLER,
BONNIE MATHIS, PAULA ZELENKO,
MARILYN HOFFMAN, LARRY GREEN,
JAKE LAFURGEY, RAY FOUST, DAVID
GUIGEAR, ROBERT M. PALMER, RICK
CARUSO, WILLIAM W. KOVL, MAXINE
ORR, VILLAGE OF GOODRICH,
VILLAGE OF GAINES, VILLAGE OF
LENNON, CHARTER TOWNSHIP OF
MUNDY, TOWNSHIP OF ARGENTINE,
CHARTER TOWNSHIP OF FLINT,
CHARTER TOWNSHIP OF MT. MORRIS,
TOWNSHIP OF GAINES, and CITY OF
FLUSHING,

        Plaintiffs,

v                                                                            No. 156579

GENESEE COUNTY,

        Defendant-Appellant,

and

GENESEE COUNTY BOARD OF
COMMISSIONERS,

        Defendant.

_____

MARKMAN, J. (*concurring in the result*).

The issue here is whether plaintiff Genesee County Drain Commissioner Jeffrey Wright's claim for unjust enrichment seeks to impose "tort liability" on defendant Genesee County for the purposes of MCL 691.1407(1) of the governmental tort liability act (GTLA), MCL 691.1401 *et seq.* I agree with the majority that the unjust-enrichment claim here does not seek to impose tort liability so defendant is not entitled to governmental immunity as to that claim. However, I respectfully disagree with its interpretation and application of *In re Bradley Estate*, 494 Mich 367; 835 NW2d 545 (2013). Accordingly, while I concur with the result reached by the majority, I differ as to its reasons for reaching that result.

## I. FACTS AND HISTORY

Plaintiff alleges that at the time relevant to this case plaintiff[1] and defendant[2] jointly purchased group health insurance from Blue Cross Blue Shield of Michigan (BCBS).[3] Both plaintiff and defendant paid premiums to BCBS for which BCBS provided healthcare coverage to both plaintiff and defendant. However, unbeknownst to plaintiff, BCBS annually refunded to defendant the amount by which the premiums paid

---

[1] The other plaintiffs, various municipalities and individuals, are not involved in this appeal. Any reference in this concurrence to "plaintiff" is exclusively to Genesee County Drain Commissioner Jeffrey Wright.

[2] Defendant Genesee County Board of Commissioners is not involved in this appeal. Any reference in this concurrence to "defendant" is exclusively to Genesee County.

[3] The record is unclear concerning the details of the contractual relationship between plaintiff, defendant, and BCBS. Plaintiff's counsel represented at a motion hearing that "[a]ctually going back we're able to identify [that] it seems like the '70s is when this [relationship] was established."

by both plaintiff and defendant exceeded the amount necessary to pay the costs of providing the coverage, and defendant placed these refunds in its general fund. When plaintiff later discovered that the excess premiums had been refunded to defendant, he sued defendant in October 2011 to recover his office's share. His claims included a contract claim and various intentional-tort claims, including conversion.

Defendant ultimately moved for summary disposition of the intentional-tort claims, as well as partial summary disposition of the contract claim to the extent that the damages sought extended beyond the six-year period of limitations. See MCL 600.5807. The trial court denied the motion for summary disposition of the intentional-tort claims and granted the motion for partial summary disposition of the contract claim. The parties then appealed the respective adverse rulings in the Court of Appeals, which affirmed in part and reversed in part. *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App 317; 869 NW2d 635 (2015). Concerning the intentional-tort claims, that court held that because "the Legislature did not include intentional torts in the GTLA's stated exceptions," "plaintiffs' intentional tort claims against defendant must be dismissed . . . ." *Id*. at 331-332. And concerning the contract claim, the court held that "plaintiffs have not come close to making a case for equitable estoppel to negate application of the statute of limitations under MCL 600.5807." *Id*. at 333. Accordingly, the Court of Appeals reversed the trial court's denial of summary disposition with respect to the intentional-tort claims, affirmed the trial court's grant of partial summary disposition with respect to the contract claim, and remanded to the trial court for further proceedings. *Id*. at 334.

Following remand, plaintiff moved to add a claim for unjust enrichment. In particular, he alleged that "[d]ue to Genesee County's wrongful retention of the Genesee

3

County Drain Commissioner's portion of the refunds, Genesee County has been unjustly enriched." In response, defendant moved for summary disposition of that claim, arguing that it was barred by governmental immunity because it effectively constituted a claim for conversion, fraud, or a similar tort. The trial court denied defendant's motion, and defendant again appealed in the Court of Appeals, which affirmed the trial court's order. *Genesee Co Drain Comm'r v Genesee Co*, 321 Mich App 74; 908 NW2d 313 (2017). The Court stated that under the doctrine of unjust enrichment, " 'the law will *imply a contract* to prevent unjust enrichment only if the defendant has been unjustly or inequitably enriched at the plaintiff's expense.' " *Id*. at 78, quoting *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 195; 729 NW2d 898 (2006). The Court then concluded that "a claim based on the equitable doctrine of unjust enrichment ultimately involves contract liability, not tort liability" and that such a claim is "not barred by the GTLA." *Id*. Defendant subsequently sought leave to appeal in this Court and we directed the Clerk to schedule oral argument on the application and ordered the parties to address "whether the Court of Appeals erred in holding that the plaintiff's claim of unjust enrichment was not subject to governmental immunity under the [GTLA], see *In re Bradley Estate*, 494 Mich 367 [835 NW2d 545] (2013), because it was based on the equitable doctrine of implied contract at law." *Genesee Co Drain Comm'r Jeffrey Wright v Genesee Co*, 501 Mich 1086 (2018).

## II. STANDARDS OF REVIEW

"The applicability of governmental immunity is a question of law that this Court reviews de novo on appeal." *Beals v Michigan*, 497 Mich 363, 369; 871 NW2d 5 (2015).

4

Moreover, we "review[] de novo a trial court's decision on a motion for summary disposition." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 398; 919 NW2d 20 (2018).

## III. ANALYSIS

### A. GOVERNMENTAL IMMUNITY

"In 1964, the Legislature enacted [the] GTLA 'to make uniform the liability of municipal corporations, political subdivisions, and the state, its agencies and departments, when engaged in a governmental function.' " *Yono v Dep't of Transp*, 499 Mich 636, 645-646; 885 NW2d 445 (2016), quoting 1964 PA 170, title. MCL 691.1407(1) of the GTLA provides as follows:

> Except as otherwise provided in this act, a governmental agency is immune from *tort liability* if the governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed. [Emphasis added.]

Thereafter, in *Bradley Estate*, 494 Mich at 371, we held that " 'tort liability' as used in MCL 691.1407(1) of the GTLA encompasses all legal responsibility for civil wrongs, other than a breach of contract, for which a remedy may be obtained in the form of compensatory damages." Concerning the word "tort," we reasoned that "a 'tort' is an act that has long been understood as a civil wrong that arises from the breach of a legal duty other than the breach of a contractual duty." *Id*. at 381. "For example, English common-law courts have for centuries recognized a civil wrong as an infringement on private rights belonging to individuals and divided civil wrongs into two categories: those sounding in contract and those sounding in tort." *Id*. We explained that the word " 'liability,' refers to liableness, i.e., 'the state or quality of being liable.' " *Id*. at 385,

5

quoting *Random House Webster's College Dictionary* (2001). "To be 'liable' means to be 'legally responsible.' " *Bradley Estate*, 494 Mich at 385 (brackets omitted), quoting *Random House Webster's College Dictionary* (2001). Considered together, " 'tort liability' as utilized in MCL 691.1407(1) means all legal responsibility arising from a noncontractual civil wrong for which a remedy may be obtained in the form of compensatory damages." *Bradley Estate*, 494 Mich at 385. We then summarized the following principles for "determining whether a cause of action imposes tort liability for purposes of the GTLA":

> Courts considering whether a claim involves tort liability should first focus on the nature of the duty that gives rise to the claim. If the wrong alleged is premised on the breach of a contractual duty, then no tort has occurred, and the GTLA is inapplicable. However, if the wrong is not premised on a breach of a contractual duty, but rather is premised on some other civil wrong, i.e., some other breach of a legal duty, then the GTLA might apply to bar the claim. In that instance, the court must further consider the nature of the liability the claim seeks to impose. If the action permits an award of damages to a private party as compensation for an injury caused by the noncontractual civil wrong, then the action, no matter how it is labeled, seeks to impose tort liability and the GTLA is applicable. [*Id.* at 389.]

Accordingly, we are obligated to apply the principles set forth in *Bradley Estate* to assess whether a claim for unjust enrichment is barred by governmental immunity.[4]

---

[4] I recognize that the instant case is somewhat unusual in the sense that both parties are governmental officials or entities, whereas the typical governmental immunity case involves a private party bringing a claim against a governmental official or entity. However, neither party has suggested that this is relevant to the pertinent analysis.

6

## B. UNJUST ENRICHMENT

"This Court has long recognized the equitable right of restitution when a person has been unjustly enriched at the expense of another." *Mich Ed Employees Mut Ins Co v Morris*, 460 Mich 180, 198; 596 NW2d 142 (1999). See also *Buell v Orion State Bank*, 327 Mich 43, 56; 41 NW2d 472 (1950) ("The phrase 'unjust enrichment' is used in law to characterize the result or effect of a failure to make restitution of or for property or benefits received under such circumstances [so] as to give rise to a legal or equitable obligation to account therefor.") (quotation marks and citation omitted).[5] Because unjust enrichment is defined by reference to restitution, I examine the latter concept to give meaning to the former. That is, to assess whether a claim for unjust enrichment is barred by governmental immunity, the relationship between unjust enrichment and restitution must be considered. The Third Restatement of Restitution and Unjust Enrichment generally discusses those legal doctrines as follows:

> Liability in restitution derives from the receipt of a benefit whose retention without payment would result in the unjust enrichment of the defendant at the expense of the claimant. While the paradigm case of unjust enrichment is one in which the benefit on one side of the transaction corresponds to an observable loss on the other, the consecrated formula "at the expense of another" can also mean "in violation of the other's legally

---

[5] Although we have referred to restitution as an "equitable" right, as explained herein, restitution may sound in either law or equity. The reference to an "equitable" right is best understood as a general reference to fairness under the law and not a reference to "equity" as a legal term of art. See *Alternatives Unlimited, Inc v New Baltimore City Bd of Sch Comm'rs*, 155 Md App 415, 457; 843 A2d 252 (2004) ("The word 'equity' (with its full grammatical paradigm) sometimes has a broadly diluted descriptive usage that ranges far beyond its more limited employment as a jurisdictional term of art.").

protected rights," without the need to show that the claimant has suffered a loss.  [1 Restatement of Restitution and Unjust Enrichment, 3d, § 1, p 3.][6]

The word "restitution," in certain cases, may refer to a remedy for tort, see 1 Dobbs, Hayden & Bublick, Torts (2d ed), § 73, at 208 (explaining that a remedy for conversion may consist of a "restitutionary recovery for the gains the defendant made by converting the chattel"), or it may refer to a remedy for breach of contract, see Restatement Contracts, 2d, § 373(1), at 208 ("[O]n a breach by non-performance that gives rise to a claim for damages for total breach or on a repudiation, the injured party is entitled to restitution for any benefit that he has conferred on the other party by way of part performance or reliance.").  In other instances, however, "restitution" may generally refer to a remedy for the failure to "do justice [under the law]."  See *Marsh v Fulton Co*, 77 US 676, 684; 10 Wall 676; 19 L Ed 1040 (1870) ("The obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation.").  See also Kull, *Restitution as a Remedy for Breach of Contract*, 67 S Cal L Rev 1465, 1478 (1994) ("Restitution . . . explains, for example, the obligation to repay money paid by mistake, or to indemnify a party who has discharged one's own

---

[6] The Third Restatement proceeds to explain that unjust enrichment is an "independent basis of liability" separate from "contract or tort":

> The identification of unjust enrichment as an independent basis of liability in common-law legal systems—comparable in this respect to a liability in contract or tort—was the central achievement of the 1937 Restatement of Restitution. . . .  The use of the word "restitution" to describe the cause of action as well as the remedy is likewise inherited from the original Restatement, despite the problems this usage creates. [Restatement of Restitution and Unjust Enrichment, § 1, p 3.]

debt; restitution in such cases imposes a liability that cannot be explained by either agreement (contract) or breach of duty (tort).").  This principle of "justice," which refers not only to rights protected by tort and contract law but also to rights protected by the court's sense of "justice under the law," may broadly be referred to as the law of unjust enrichment.  See *Tkachik v Mandeville*, 487 Mich 38, 47-48; 790 NW2d 260 (2010) ("Unjust enrichment is defined as the unjust retention of 'money or benefits which in justice and equity belong to another.' "), quoting *McCreary v Shields*, 333 Mich 290, 294; 52 NW2d 853 (1952) (quotation marks omitted).[7]

" '[R]estitution is a legal remedy when ordered in a case at law and an equitable remedy . . . when ordered in an equity case,' and whether it is legal or equitable depends on 'the basis for the plaintiff's claim' and the nature of the underlying remedies sought." *Great-West Life & Annuity Ins Co v Knudson*, 534 US 204, 213; 122 S Ct 708; 151 L Ed 2d 635 (2002) (brackets omitted), quoting *Reich v Continental Cas Co*, 33 F3d 754, 756 (CA 7, 1994).  "In cases in which the plaintiff 'could *not* assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him,' the plaintiff had a right to restitution *at law* through an action derived from the common-law writ of assumpsit."  *Great-West Life & Annuity*, 534 US at 213, quoting 1 Dobbs,

---

[7] See also *Dep't of Human Servs ex rel Palmer v Unisys Corp*, 637 NW2d 142, 154 (Iowa, 2001) ("The doctrine of unjust enrichment serves as a basis for restitution.  It may arise from contracts, torts, or other predicate wrongs, or it may also serve as independent grounds for restitution in the absence of mistake, wrongdoing, or breach of contract.") (citation omitted).

Remedies (2d ed), § 4.2(1), p 571.[8] On the other hand, "a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Great-West Life & Annuity*, 534 US at 213. "But where 'the property sought to be recovered or its proceeds have been dissipated so that no product remains, the plaintiff's claim is only that of a general creditor,' and the plaintiff 'cannot enforce a constructive trust of or an equitable lien upon other property of the defendant.' " *Id*. at 213-214 (brackets omitted), quoting Restatement of Restitution, § 215, comment *a*, p 867. In short, restitution is a somewhat amorphous term that can refer in particular circumstances to a remedy for a tort, a remedy for a breach of contract, a remedy that sounds in law, or a remedy that sounds in equity. To resolve the instant case, I would assess the specific nature of the remedy that is implicated by plaintiff's unjust-enrichment claim.

---

[8] This Court has similarly observed that assumpsit constitutes an action at law. See *Hafner v A J Stuart Land Co*, 246 Mich 465, 470; 224 NW 630 (1929) ("Had [plaintiffs] sued at law, after rescission by their own act, recovery would be in assumpsit, as for money had and received, on the theory that those defendants to whom money had been paid held it for plaintiffs under implied promise to pay."). Courts of other states have similarly concluded that assumpsit is an action at law. See, e.g., *Scottsbluff v Waste Connections of Nebraska, Inc*, 282 Neb 848, 858; 809 NW2d 725 (2011) ("All quasi-contract claims developed out of the assumpsit form of action, which a party brought in a court of law. So we hold that any quasi-contract claim for restitution is an action at law.") (citations omitted); *Jones v Mackey Price Thompson & Ostler*, 355 P3d 1000, 1012 n 32; 2015 UT 60 (2015) ("The appropriate proceeding in an action at law for the payment of money by way of restitution is . . . in States retaining common law forms of action, an action of general assumpsit . . . .") (quotation marks and citations omitted).

Here, plaintiff has not alleged that the excess-premium refunds remain in the possession of defendant, and he has not sought equitable relief, such as a constructive trust. Rather, plaintiff has only sought a money judgment, the hallmark of restitution at law. Consequently, the relevant framework is restitution at law through assumpsit. " 'Assumpsit' is defined as '**1.** An express or implied promise, not under seal, by which one person undertakes to do some act or pay something to another <an assumpsit to pay a debt>. **2.** A common-law action for breach of such a promise or for breach of a contract.' " *Fisher Sand & Gravel Co v Neal A Sweebe, Inc*, 494 Mich 543, 564; 837 NW2d 244 (2013), quoting *Black's Law Dictionary* (9th ed), p 142. "With the adoption of the General Court Rules in 1963, assumpsit as a form of action was abolished." *Fisher Sand & Gravel Co*, 494 Mich at 564. "But notwithstanding the abolition of assumpsit, the substantive remedies traditionally available under assumpsit were preserved[.]" *Id*.

"Assumpsit may be upon an express contract or promise, or for nonperformance of an oral or simple written contract or it may be a general assumpsit upon a promise or contract *implied by law*." *Kristoffy v Iwanski*, 255 Mich 25, 28; 237 NW 33 (1931) (emphasis added).[9] As further noted in 1 Palmer, The Law of Restitution (1978), § 1.2, p 7, an implied-in-law contract became commonly known as a "quasi-contract":

---

[9] Assumpsit may also be brought upon a contract implied in fact. See *Hutchins v Vinkemulder*, 187 Mich 676, 681; 154 NW 80 (1915) ("Where a duty arises from the relation of the parties, there is ordinarily a promise, either implied in fact or created by operation of law, to perform that duty, and upon the breach of which an action of assumpsit may be maintained under proper pleadings."). There is a difference between an implied-in-law contract and an implied-in-fact contract, as this Court explained in *Cascaden v Magryta*, 247 Mich 267, 270; 225 NW 511 (1929):

[A] promise to pay money was "implied" as a means of allowing recovery in *assumpsit* for money paid by mistake, where there was no element of actual contract, and the development of quasi contract had begun. The fiction of a contract was being used to allow recovery in a contract form of action, and in retrospect the reason for doing so was to deprive the defendant of an unjust enrichment. [Citation omitted.]

" 'The right to bring this action [in assumpsit] for money exists whenever a person, natural or artificial, has in his or its possession money which in equity and good conscience belongs to the plaintiff, and neither express promise nor privity between the parties is essential.' " *Mich Ed Employees Mut Ins Co*, 460 Mich at 198, quoting *Hoyt v Paw Paw Grape Juice Co*, 158 Mich 619, 626; 123 NW 529 (1909) (emphasis omitted). Elaborating on assumpsit, *Hoyt* stated:

It is an equitable action, and can be maintained in all cases for money which in equity and good conscience belongs to the plaintiff.

\* \* \*

We understand the law to be well settled that the action of assumpsit for money had and received is essentially an equitable action, founded upon all the equitable circumstances of the case between the parties; and if it appear, from the whole case, that the defendant has in his hands money, which, according to the rules of equity and good conscience, belongs, or ought to be paid, to the plaintiff, he is entitled to recover; and that as a

---

There are two kinds of implied contracts: one implied in fact, and the other implied in law. The first does not exist unless the minds of the parties meet, by reason of words or conduct. The second is *quasi* or constructive, and does not require a meeting of minds, but is imposed by fiction of law, to enable justice to be accomplished, even in case no contract was intended.

"A contract is implied in fact where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction." *Erickson v Goodell Oil Co, Inc*, 384 Mich 207, 212; 180 NW2d 798 (1970).

general rule, where money has been received by a defendant under any state of facts which would in a court of equity entitle the plaintiff to a decree for the money, when that is the specific relief sought, the same state of facts will entitle him to recover the money in this action. [*Hoyt*, 158 Mich at 626 (quotation marks and citations omitted).][10]

Furthermore, the common law recognized a distinction between actions in assumpsit and tort, even when the conduct at issue might sustain both actions. For example, "[a]t common law, one might waive tort and sue in assumpsit in case the tort arose out of contract relations between the parties or the tort consisted of a conversion of plaintiff's property into money or money's worth." *Nelson & Witt v Texas Co*, 256 Mich 65, 71; 239 NW 289 (1931). That is, when

> the defendant has converted property of the plaintiff into money or money's worth, the plaintiff may waive the tort, and sue in assumpsit, treating the sale as made on his behalf. So, where defendant holds possession of property by virtue of contract relations with plaintiff, and converts such property, the plaintiff may, at his election, proceed in assumpsit. These are the only cases in which the plaintiff has election, under the common law. [*Janiszewski v Behrmann*, 345 Mich 8, 38-39; 75 NW2d 77 (1956) (quotation marks and citations omitted).]

There is thus a clear distinction between tort actions and actions in assumpsit-- actions in assumpsit are premised on a contractual relationship, actual or implied, while tort actions are not. See, e.g., *Kristoffy*, 255 Mich at 28 ("Assumpsit may be upon an express contract or promise, or for nonperformance of an oral or simple written contract, or it may be a general assumpsit upon a promise or contract implied by law."); *Albee v Schmied*, 250 Mich 270, 271-272; 230 NW 146 (1930) ("The demand here, the tort

---

[10] Notwithstanding several references to "equity" in *Hoyt*, assumpsit remains an action at law. See note 8 of this opinion.

having been waived, is in assumpsit, as upon promise and on contract. . . . The evidence must establish the tort although *the action is in contract*.”) (emphasis added); *Old Ben Coal Co v Universal Coal Co*, 248 Mich 486, 493; 227 NW 794 (1929) (“The declaration is in assumpsit claiming damages for breach of contract. It is *an action ex contractu*, in contract, and arising upon contract.”) (emphasis added).

To summarize, when a party has been unjustly enriched-- by a tort, contract breach, or simply by an inequity that the courts are prepared to recognize-- the other party is entitled to restitution. Furthermore, when such a remedy sounds in law and seeks to impose a contract implied in law, the proper framework of that remedy is the traditional framework of assumpsit.

With these principles in mind, I return to *Bradley Estate*. As noted previously, in *Bradley Estate*, 494 Mich at 389, this Court stated that the initial inquiry as to GTLA tort-liability claims is whether “the wrong alleged is premised on the breach of a contractual duty . . . .” This, I believe, is tantamount to asking whether the wrong alleged is premised on a contractual relationship. In the instant case, plaintiff’s claim for unjust enrichment seeks restitution in the form of money damages and does not seek restitution in equity. Therefore, the claim seeks restitution at law on the basis of an implied-in-law contract, which, as explained, is premised on the common-law action of assumpsit. *Great-West Life & Annuity Ins Co*, 534 US at 213. And as also explained, the common-law action of assumpsit is premised on a contractual relationship, whether actual or implied. Accordingly, I agree with the Court of Appeals that plaintiff’s claim for unjust enrichment is premised on a contractual relationship and that the claim therefore is not barred by governmental immunity. And as a result, there is no need to address whether

14

*every* claim for unjust enrichment is or is not barred by governmental immunity. That is, it need not be addressed on this occasion whether all claims for unjust enrichment that are not grounded in the common-law action of assumpsit, or are not premised on contractual relationships, are barred by governmental immunity.[11]

IV. RESPONSE TO THE MAJORITY

Although I agree with the majority that the Court of Appeals should be affirmed, for the reasons set forth in this opinion, I disagree with the majority's attempt to limit the scope of *Bradley Estate* by concluding that an unjust-enrichment claim is not governed by the contract/tort civil-wrong dichotomy laid out in that case.

First, the majority asserts that "the plaintiff's unjust-enrichment claim is . . . outside the scope of 'civil wrongs' " under *Bradley Estate*. I disagree that unjust enrichment can be removed from the contract/tort civil-wrong dichotomy under *Bradley Estate*. Therein, we explained that " '[i]t is customary in the law to arrange the wrongs for which individuals may demand legal redress into two classes: the first embracing those which consist in a mere breach of contract, and the second those which arise independent of contract.' " *Bradley Estate*, 494 Mich at 383 n 34, quoting Cooley, A Treatise on the Law of Torts (2d ed, 1888), p 2. The second type of wrong, we explained, sounds in tort. See *id*. at 384 ("[When] a party breaches a duty stemming from

---

[11] In *Kammer Asphalt Paving Co, Inc v East China Twp Sch*, 443 Mich 176, 187; 504 NW2d 635 (1993), we allowed the plaintiff subcontractor's claim for unjust enrichment to proceed against the defendant school district, explaining that "reasonable minds could find that defendant was unjustly enriched." Although we did not address the issue of governmental immunity in *Kammer Asphalt*, the analysis and result in that case are consistent with the position reached here.

15

a legal obligation, other than a contractual one, the claim sounds in tort."). And 1 Restatement of Restitution and Unjust Enrichment, 3d, § 1, comment *a*, p 3 observes that "[w]hile the paradigm case of unjust enrichment is one in which the benefit on one side of the transaction corresponds to an observable loss on the other, the consecrated formula 'at the expense of another' can also mean '*in violation of the other's legally protected rights*' without the need to show that the claimant has suffered a loss." (Emphasis added.) As a result, when a claim for unjust enrichment is one grounded upon a " 'violation of [one's] legally protected rights,' " *id.*, unjust enrichment is a "wrong[] for which individuals may demand legal redress," Cooley, p 2, under *Bradley Estate*. It follows that such a wrong either sounds in contract or in tort under *Bradley Estate*; the case leaves no leeway for such a wrong to be categorized as sounding entirely in something else; rather, a binary analysis was straightforwardly defined, but that analysis is now confused and unsettled by the majority's holding in this case.

Second, the majority asserts that the statement in *Bradley Estate*, 494 Mich at 371, that " 'tort liability' as used in . . . the GTLA encompasses all legal responsibility for civil wrongs, other than a breach of contract" was merely obiter dictum "because it was unnecessary [therein] to decide the case once the Court held that 'a civil contempt petition seeking indemnification damages under MCL 600.1721' was barred by the GTLA[.]" Again, I disagree. While " '[i]t is a well-settled rule that any statements and comments in an opinion concerning some rule of law or debated legal proposition not necessarily involved nor essential to determination of the case in hand are, however illuminating, but obiter dicta and lack the force of an adjudication,' " *McNally v Wayne Co Bd of Canvassers*, 316 Mich 551, 558; 25 NW2d 613 (1947), quoting *People v Case*,

16

220 Mich 379, 382-383; 190 NW2d 289 (1922), the identification of "contract" and "tort" as the two exclusive types of "civil wrongs" was, in my judgment, entirely necessary in the course of determining that the civil contempt petition in *Bradley Estate* seeking indemnification damages did not seek contract liability and thus sought "tort liability" under the GTLA.[12]

Third, the majority states that "our holding in *In re Bradley Estate* simply did not address an action like this one in which the plaintiff is seeking restitution for a benefit unfairly retained by the county, rather than compensatory damages for an injury." Therefore, the majority reasons that "tort liability" under *Bradley Estate* is limited to cases in which the plaintiff seeks compensatory damages for an injury and here, because plaintiff is seeking restitution, the GTLA does not bar the claim. Again, I disagree. While I appreciate that *Bradley Estate* refers to "compensatory damages" as one of the hallmarks of a tort, as explained previously, the remedy for tortious conversion may consist of a "restitutionary recovery for the gains the defendant made by converting the chattel." 1 Dobbs, Hayden & Bublick, Torts (2d ed), § 73, p 208. Even though plaintiff here only seeks such a restitutionary remedy for tortious conversion, his claim nonetheless sounds in tort despite his failure to request compensatory damages.[13] The failure to seek compensatory damages and instead to seek a restitutionary remedy, which

---

[12] Indeed, if the quoted portion of *Bradley Estate* was dictum, the fact that "no party asks us to overrule *In re Bradley Estate*" would be of no moment, contrary to the emphasis given this point by the majority.

[13] As noted previously, the Court of Appeals determined at an earlier stage of the proceedings that plaintiff's conversion claim sought to impose "tort liability" under the GTLA and that ruling is not presently at issue.

in many cases will be similar if not identical to a compensatory-damages remedy, cannot properly establish the sole ground for removing a claim from within the scope of "tort liability" in *Bradley Estate*.

Fourth, while I agree with much of the majority's thorough discussion of the law of unjust enrichment and restitution, I disagree with its conclusion that a claim for unjust enrichment is not governed by the contract/tort civil-wrong dichotomy of *Bradley Estate*. "[A] 'central purpose' of governmental immunity is 'to prevent a drain on the state's financial resources, by avoiding even the expense of having to contest on the merits any claim barred by governmental immunity.' " *Costa v Community Emergency Med Servs, Inc*, 475 Mich 403, 410; 716 NW2d 236 (2006), quoting *Mack v Detroit*, 467 Mich 186, 203 n 18; 649 NW2d 47 (2002). If this Court now embarks upon the course of disregarding the contract/tort civil-wrong dichotomy by concluding that unjust enrichment stands apart from this dichotomy because it is not a "civil wrong," it establishes for future claims against public defendants a very distinctive and uncertain legal premise allowing this Court more readily to conclude that other forms of nontraditional tort claims also stand apart from the *Bradley Estate* framework. And thus the majority (1) effectively diminishes this Court's decision in *Bradley Estate* while elevating the stature of its dissents, unsettling and confusing the law without, as appears to be its inclination, straightforwardly reversing the decision; (2) incentivizes litigation that will explore the new boundaries of the GTLA; and (3) imposes greater litigative costs on public defendants that will erode the primary legislative purpose of that act-- all in support of the same result that would have adhered had the majority treated *Bradley Estate* as the legitimate precedent that it is. In place of a principled (and in my judgment,

18

a correct) interpretation of "tort liability" in MCL 691.1407(1) in *Bradley Estate*, the majority introduces ambiguity and future judicial decision-making of an ad hoc character.

## V. CONCLUSION

Unjust-enrichment and restitution claims that are premised on a contractual relationship are not barred by the GTLA. In the instant case, plaintiff's claim for unjust enrichment seeks restitution as a legal remedy in the form of money damages. His claim is premised on a contractual relationship, actual or implied, with defendant. Because such a claim against a governmental agency is not barred by the GTLA, plaintiff's specific unjust-enrichment claim is not barred. Accordingly, I concur with the majority's decision to affirm the Court of Appeals, albeit on significantly different grounds.

Stephen J. Markman
Brian K. Zahra
